**Julie DUGGINS, a minor by her parent and natural guardian, Rebecca DUGGINS, Plaintiff/Appellant,**

v.

**STEAK 'N SHAKE, INC., Defendant/Appellee.**

No. 99–4264, 99–4313.

United States Court of Appeals, Sixth Circuit.

Jan. 26, 2001.

Before NORRIS and CLAY, Circuit Judges; and ROSEN, District Judge .*

ROSEN, District Judge.

Plaintiff Appellant Julie Duggins appeals the District Court's entry of summary judgment in favor of Defendant Steak 'n Shake, Inc. in this Title VII sex discrimination/hostile work environment action and the denial of her post-discovery cut-off motion to amend her complaint to add a Fair Labor Standards Act ("FLSA")

* The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation.

claim. For the following reasons, we affirm the decisions of the District Court.

## I. INTRODUCTION

This is a hostile work environment sexual harassment case. Plaintiff initiated this action by filing a six-count Complaint in which she asserted claims against her former employer, Steak 'n Shake, Inc., and various individuals. Specifically, Plaintiff alleged claims of sex discrimination/hostile work environment and retaliation in violation of Title VII, 42 U.S.C. § 2000e *et seq.;* violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12110 *et seq.;* and common law claims of assault, battery and negligence. Plaintiff subsequently withdrew her claims for violation of the ADA, assault, battery and negligence, and the various individual defendants were dismissed on motion.

On July 17, 1998, two weeks after the discovery cut-off and on the eve of the dispositive motion deadline, Plaintiff filed a motion to amend her Complaint to assert an additional claim against Steak 'n Shake for violation of the Fair Labor Standards Act, arguing that such a claim was implicit in the factual allegations contained in her original Complaint, and, therefore, she should be permitted to specifically assert such a claim and seek relief thereunder. On August 10, 1999, the Magistrate Judge to whom the case had been referred found that no FLSA claim was pleaded and recommended that the Plaintiff should not be permitted to amend her Complaint to assert it at such a late date.

Meanwhile, Defendant Steak 'n Shake moved for summary judgment on Plaintiff's Title VII claims of sexual harassment hostile work environment and retaliation. The Magistrate Judge recommended that summary judgment on Plaintiff's Title VII claims be granted. On September 17, 1999, the District Court entered an order adopting the Magistrate Judge's Reports and Recommendations, and entered Judgment in favor of Defendant.[1] Plaintiff has appealed the grant of Defendant's motion for summary judgment as it relates to the sexual harassment/hostile work environment claim, only. She also is appealing the District Court's denial of her motion for leave to amend her complaint.

## II. FACTUAL BACKGROUND

Plaintiff Julie Duggins was hired by Defendant Steak 'n Shake, Inc. as a server in July 1995. At the time she was hired. Plaintiff was fourteen years old and was a student in high school. Her mother, Rebecca Duggins, was also employed by Steak 'n Shake as a manager.

Plaintiff began her employment for Defendant at the Steak 'n Shake restaurant located on Tylersville Road in Cincinnati, Ohio. Plaintiff's mother also worked at the Tylersville Road restaurant.

### A. PLAINTIFF'S RELATIONSHIP WITH TROY KEITH

In late 1995, Rebecca Duggins introduced her daughter, Julie, to Troy Keith, who was considered a family friend. Keith worked as a trainer for Defendant at its restaurant on Field–Ertel Road. During the Fall of 1995, Keith often gave Plaintiff rides to work. Plaintiff and her sister also went bowling with Keith, watched videos with him and also went out to the movies

---

1. In that same order, the District Court also adopted the Magistrate Judge's recommendation that Steak 'n Shake's request for attorneys' fees be denied. Steak 'n Shake filed a cross-appeal on this issue but subsequently abandoned it, deeming it to be mooted by this Court's ruling on the attorneys' fees issue in a related-case, *Rebecca Duggins v. Steak 'N Shake, et al.,* 195 F.3d 828 (6th Cir.1999).

with him. Keith had also been in Plaintiff's house on one or two occasions. Although Keith was an employee of Steak 'n Shake, Plaintiff never worked at the same restaurant with him and never worked under his supervision.[2]

On Christmas Eve, 1995, Keith hosted a party at his apartment. Keith allegedly posted invitations to his party in one or more Steak 'n Shake locations. Keith also invited Plaintiff and her younger sister to the party. Plaintiff was not required to attend this party as part of her job and no manager instructed or encouraged her to attend the party. She testified that she decided to go to the party because it sounded like fun to attend a party with some of her co-workers. (Although some of the people who attended the party were Steak 'n Shake employees, others were not. No Steak 'n Shake managers were invited to the party and none attended.) With their mother's permission, Keith picked Plaintiff and her 11–year–old sister up at their home and drove them to the party.

At the party, Plaintiff consumed several alcoholic drinks. She testified that she had the drinks because she "liked the feeling of being treated like an adult." At the end of the party, when all the guests had left, Plaintiff alleges that Keith raped her in his bedroom. Keith subsequently drove Plaintiff and her sister home.

Plaintiff did not report the alleged rape to the police, nor did she see a doctor or get tested for pregnancy or sexually-transmitted diseases. Nor did Plaintiff talk to anyone at Steak 'n Shake about the alleged rape. Nevertheless, Mary Clayton in Steak 'n Shake's human resources department heard a rumor about the incident and attempted to contact Plaintiff's mother, Rebecca Duggins. Ms. Clayton testified that she decided to try to contact Plaintiff's mother rather than Plaintiff herself because Mrs. Duggins was a manager and Plaintiff was a minor.

Plaintiff testified that she overheard the telephone conversation between her mother and Ms. Clayton and that Clayton had requested a meeting with Plaintiff and her mother to discuss the rumors that she had heard about the incident with Keith, but Mrs. Duggins refused to meet with Clayton or to discuss the matter further. Mrs. Duggins admits that she never filed criminal charges regarding the alleged rape.

Plaintiff testified in her deposition that after the rape, she had contact with Keith on only three occasions, none of which were at Steak 'n Shake. First, approximately two weeks after the alleged rape, Plaintiff accepted a ride home with Keith when he appeared at her school unexpectedly. When they arrived at her house, no one was home. Plaintiff then allowed Keith into the house where he stayed for only a few minutes. Subsequently, Plaintiff and her mother ran into Keith at a Wal–Mart store, but did not speak to him. The last "contact" Plaintiff had with Keith was a telephone voice message he had left for her asking her to call him. Plaintiff never returned his call.

Keith denies that he raped Plaintiff or sexually harassed her in any manner. He testified that he never made any sexual advances toward Plaintiff and never had any sexual contact with her. It is undisputed that the police never spoke to Keith about the alleged rape.

## B. MR. KEITH'S EMPLOYMENT AT STEAK 'N SHAKE.

Keith testified that he was investigated two times by Steak 'n Shake regarding

---

**2.** Plaintiff did, at one point, transfer to the Field–Ertel restaurant, but by that time, Keith had transferred to one of the Steak 'n Shake restaurants in Dayton. Keith left the Steak 'n Shake in Dayton before Plaintiff quit her job with Steak 'n Shake in Cincinnati.

complaints of inappropriate behavior. He was first questioned in October of 1995 (before the alleged rape of Plaintiff) regarding a complaint from his former girlfriend, Christy Allgood. Both Keith and Allgood were Steak 'n Shake trainers, and both were hourly employees. Allgood alleged that Keith massaged her shoulders at work. In response to this complaint, Chris Arguello of Steak 'n Shake's human resources department spoke to Keith about the incident. Arguello ultimately determined that no action was warranted because it was "just an incident between two people that had been going out ."

In January 1996 (after the alleged rape). Keith was investigated a second time on a complaint made by the father of a server, Kelly Beekman. The complaint involved alleged contact between Keith and Beekman that purportedly occurred outside the workplace. Mary Clayton of human resources investigated the matter. Ms. Beekman, however, denied any contact with Keith outside of work. A meeting was set up to discuss the matter further with Beekman, but Beekman never showed up. Therefore, Ms. Clayton determined not to proceed any further on the matter. Subsequently, Beekman's father apologized and told Ms. Clayton that his daughter had made a "mistake" and he wanted to drop the matter.

## C. PLAINTIFF'S RESIGNATION FROM STEAK 'N SHAKE

Plaintiff continued working for Steak 'n Shake after the alleged rape by Keith. In July 1996, however, Plaintiff was transferred from the Tylersville restaurant when it was discovered that she was working directly under the direct supervision of her mother. She was re-assigned to the Fields–Ertel restaurant. A month later, in August 1996, Plaintiff quit her job. She testified in her deposition that the reasons for her resignation were: her displeasure with the transfer to the Fields–Ertel location; the alleged rape; working too many hours and not being paid for all of her hours; working in production rather than in service where she earned more in tips; and that she was offended by employees dating one another. Despite these reasons. Plaintiff testified that she never talked to anyone at Steak 'n Shake about the alleged rape, and she never made any complaints about sexual harassment.

On October 4, 1996, Plaintiff filed an EEOC charge in which she alleged only Title VII sexual harassment and violation of the Equal Pay Act of 1974. Upon the issuance of a Notice of Right to Sue, Plaintiff initiated the instant action in the United States District Court for the Southern District of Ohio. She now appeals the District Court's decisions denying her motion to amend her complaint and granting Defendant's motion for summary judgment.

## III. DISCUSSION

## A. THE DISTRICT COURT DID NOT ERR IN DENYING PLAINTIFF'S MOTION TO AMEND HER COMPLAINT.

The general standard of review for a district court's decision not to allow an amendment of the complaint is abuse of discretion. *See LRL Properties v. Portage Metro Housing Auth.,* 55 F.3d 1097, 1104 (6th Cir.1995). Abuse of discretion is defined as a "definite and firm conviction that the trial court committed a clear error of judgment." *Logan v. Dayton Hudson Corp.,* 865 F.2d 789, 790 (6th Cir.1989). Abuse of discretion occurs when a district court fails to state the basis for its denial or fails to consider the competing interest of the parties and likelihood of prejudice to the opponent. *See Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

■ Federal Rule of Civil Procedure 15(a) provides that parties may amend their pleading by leave of court and leave shall be freely given when justice so requires. "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should.... be 'freely given.'" *Foman,* 371 U.S. at 182, 83 S.Ct. 227. *See also. Brooks v. Celeste,* 39 F.3d 125, 130 (6th Cir.1994); *Duggins v. Steak 'N Shake, Inc.,* 195 F.3d 828, 834 (6th Cir.1999).[3] To deny a motion to amend, a court must find "at least some significant showing of prejudice to the opponent." *Moore v. City of Paducah,* 790 F.2d 557, 562 (6th Cir.1986). This Court has specifically recognized that allowing amendment after the close of discovery creates significant prejudice, and other Circuits agree. *See Duggins v. Steak 'N Shake, supra,* 195 F.3d at 834, and cases cited therein. *See also, Holland v. Metropolitan Life Ins. Co.,* 869 F.2d 1490, 1989 WL 8994 (6th Cir.1989) (unpublished decision; text available in WESTLAW) (an increased burden is on the movant after the close of discovery to show justification for the failure to move earlier).

In this case, the Magistrate Judge issued a Report and Recommendation and Order on Plaintiff's Motion to Amend, recommending that Plaintiff's motion to amend her Complaint to assert a violation of the Fair Labor Standards Act be denied. The District Court adopted and incorporated by reference the Report and Recommendation of the Magistrate Judge, and affirmed the Magistrate Judge's order denying Plaintiff's Motion to Amend.

The Magistrate Judge found that the Defendant would be substantially prejudiced if the Court were to permit Plaintiff to amend her complaint to assert an FLSA claim, specifically noting that both "the discovery deadline and the dispositive motion deadline has long since passed." He also observed that Plaintiff failed to offer any explanation whatsoever for her delay in seeking to add the FLSA claim. The Magistrate Judge further found "wholly without merit" Plaintiff's argument that an FLSA claim was merely "inartfully pleaded" in her original Complaint and that all she was seeking was leave to "clarify" her claim under the FLSA. The Magistrate Judge was persuaded by the fact that nowhere in her Complaint did Plaintiff make any specific reference to the FLSA yet she had specifically asserted claims under both Title VII and the ADA, as well as specific claims for assault, battery and negligence.

Under virtually identical circumstances, this Court upheld the district court's decision to deny the plaintiff leave to amend her complaint late in the litigation process. *See, Duggins v. Steak 'N Shake, supra,* 195 F.3d at 834. Rebecca Duggins (mother of Plaintiff, Julie Duggins) sued Steak 'n Shake for retaliation under Title VII. *Id.* at 828. After the close of discovery, Mrs. Duggins moved for leave to amend the complaint to add a claim under the Fair Labor Standards Act. *Id.* at 833. Just as Plaintiff Julie Duggins argues here, Rebecca Duggins argued that her complaint as originally filed contained the factual bases for an FLSA claim and, therefore, leave to amend should be granted. *Id.* This Court found no abuse of discretion on the part of the district court in denying leave to amend explaining,

---

**3.** This *Duggins* case was an action brought by Plaintiff Julie Duggins' mother, Rebecca Duggins, and for clarity is referred to herein as the *"Rebecca Duggins"* case.

The plaintiff was obviously aware of the basis of the claim for many months, especially since some underlying facts were made a part of the complaint. Plaintiff delayed pursuing this claim until after discovery had passed, the dispositive motion deadline had passed, and a motion for summary judgment had been filed. There appears to be no justification for the delay, and the plaintiff proposes none. Allowing amendment at this late stage in the litigation would create significant prejudice to the defendants in having to reopen discovery and prepare a defense for a claim quite different from the sex-based retaliation claim that was before the court.

195 F.3d at 834.

■ Plaintiff's failure to move to amend her Complaint in this case before the discovery cutoff and her failure to provide an explanation for the delay, coupled with the prejudice to the Defendant in having to prepare a defense for a claim quite different from her harassment claim, justify the decision of the District Court to deny her motion. Consistent with this Court's decision in *Rebecca Duggins,* the decision of the District Court was not an abuse of discretion.

B. THE DISTRICT COURT DID NOT ERR IN GRANTING SUMMARY JUDGMENT TO DEFENDANT ON PLAINTIFF'S CLAIM OF SEXUAL HARASSMENT.

■ The heart of Plaintiff's appeal is her challenge to the district court decision granting the Defendant's Motion for Summary Judgment. The review of the district court's grant of summary judgment is *de novo. See Blankenship v. Parke Care Centers, Inc.* 123 F.3d 868, 871 (6th Cir. 1997), *cert. denied,* 522 U.S. 1110, 118 S.Ct. 1039, 140 L.Ed.2d 105 (1998), citing *Kauffman v. Allied Signal, Inc.,* 970 F.2d 178, 182 (6th Cir.1992), *cert. denied,* 506 U.S. 1041, 113 S.Ct. 831, 121 L.Ed.2d 701 (1992). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Blankenship,* 123 F.3d at 871; Fed.R.Civ. P. 56(c). The evidence is viewed in the light most favorable to the nonmoving party. *Blankenship. supra.* The court is to determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.,citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ The district court held that Plaintiff had failed to establish a *prima facie* case of sexual harassment, and that Defendant, therefore, was entitled to judgment in its favor as a matter of law. There are two types of sexual harassment: (1) harassment that creates a hostile or offensive working environment; and (2) *quid pro quo* harassment, in which a supervisor demands sexual favors as a condition for job benefits. *See, Kauffman, supra,* 970 F.2d at 182. In the present case. Plaintiff alleged only the former type of harassment.

■ To prevail on a sexually hostile work environment claim, a plaintiff must allege and demonstrate (1) that she was a member of a protected class; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her sex; (4) that the harassment had the effect of unreasonably interfering with Plaintiff's work performance and was sufficiently severe or pervasive to create a hostile or offensive working environment; and (5) that the employer knew or should

have known of the charged sexual harassment and failed unreasonably to take prompt and appropriate corrective action. *See Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829–30 (6th Cir.1999).

 The "based on sex" requirement of a hostile work environment claim includes sexually related remarks and conduct, as well as non-sexual conduct "where it evinces anti-female animus." *Williams v. General Motors Corp.*, 187 F.3d 553, 565 (6th Cir.1999). The bottom line in a sexual harassment case, however, is that the plaintiff must always prove that the conduct at issue was not merely tinged with offensive sexual connotations, but actually constituted "discriminat[ion] ... because of ... sex." *Oncale v. Sundowner Offshore Services, Inc.*, 523 U.S. 75, 80, 118 S.Ct. 998, 1002, 140 L.Ed.2d 201 (1998) (internal citations and punctuation omitted).

 The court must consider the totality of the circumstances when determining whether, objectively, the alleged harassment is sufficiently severe or pervasive to constitute a hostile work environment. *Bowman v. Shawnee State University*, 220 F.3d 456, 463 (6th Cir.2000).

"The issue is not whether each incident of harassment standing alone is sufficient to sustain the cause of action in a hostile environment case, but whether—taken together—the reported incidents make out such a case. The work environment as a whole must be considered rather than a focus on individual acts of alleged hostility. Isolated incidents, however, unless extremely serious, will not amount to discriminatory changes in the terms or conditions of employment." *Id.* (citations and internal punctuation omitted).

 Plaintiff's allegations of harassment in this case include (1) the rape; (2) that she was not paid for all the hours she worked; (3) that she was often scheduled to work in production but she preferred to work in service where tips were better; (4) that she was scheduled for too many hours; (5) that the managers were "rude"; (6) that the General Manager drank; and (7) that she was offended by the relationships and dating among employees.[4]

The District Court found that Plaintiff cannot show she was subject to a hostile work environment because with the exception of the alleged rape. Plaintiff failed to show that any of the above enumerated

4. Plaintiff was specifically asked at her deposition to give all of the reasons she quit her job at Steak 'n Shake and to identify everything that went on at Steak 'n Shake which she found offensive. Plaintiff listed the conduct specified above. [*See* J.A. pp. 550–552; 578–585.] Long after her deposition and after Defendant filed its motion for summary judgment, in support of her response to the motion. Plaintiff submitted an affidavit adding an additional complaint of harassment—that after she returned to work at Steak 'n Shake after Christmas 1995, Troy Keith began contacting her on her pager and would leave the message "304," which Plaintiff claims she and all of her friends knew meant, when read upside down, "hoe" (i.e., "whore."). Plaintiff, however, specifically testified at her deposition that the *only* contacts she had with Keith after the alleged rape in December 1995 were when he once showed up at school and gave her a ride home, one encounter with him a year later when she was shopping at Wal–Mart with her mother, and some voice mail messages he left for her on their answering machine. [*See* J.A. 570–577.] With respect to these "voice mail messages," Plaintiff testified that the messages were merely that he wanted to talk to her and a couple of times when he said he missed her. [J.A. 577.] Because Plaintiff's affidavit statement concerning being contacted by Troy Keith on her pager and being left the "304" messages after the alleged rape contradicts Plaintiff's prior sworn deposition testimony, it was properly not considered by the District Court in deciding Defendant's Motion for Summary Judgment. *See Reid v. Sears, Roebuck and Co.*, 790 F.2d 453, 460 (6th Cir.1986).

complaints and incidents were perpetrated "based upon Plaintiff's sex," and (2) she failed to establish that the incidents about which she complains were sufficiently severe or pervasive to alter her employment conditions. We agree.

■ First. Plaintiff's alleged rape cannot serve as a basis for her claim of hostile work environment. This incident occurred at a private party after working hours given by an hourly employee who did not even work at the same restaurant as Plaintiff, with no member of management present. After the rape, Plaintiff testified that she had contact with Keith on only three occasions, all of which occurred outside the workplace. In addition, after the rape, Plaintiff continued to work for Defendant for more than eight months without making any complaints regarding the alleged rape or harassment or any other complaint of sexual harassment or a sexually hostile work environment.

■ Although the Sixth Circuit has not addressed this issue, other courts have held that generally an employer is not liable for the harassment or other unlawful conduct perpetrated by a non-supervisory employee after work hours and away from the workplace setting. *See, Candelore v. Clark County Sanitation District*, 975 F.2d 588, 590 (9th Cir.1992). *See also, McGuinn–Rowe v. Foster's Daily Democrat*, 1997 WL 669965 (D.N.H. July 10, 1997) (unpublished decision), *Temparali v. Rubin*, 1997 WL 361019 (E.D.Pa. June 20, 1997) (unpublished decision). However, when an employee is forced to work for, or in close proximity to, someone who is harassing her outside the workplace, the employee may reasonably perceive the work environment to be hostile. *See, e.g., Ellison v. Brady*, 924 F.2d 872, 882 (9th Cir. 1991); *Temparali v.. Rubin, supra.*

*Temparali* is factually similar to the instant action. In that case, the plaintiff was raped by a co-worker at a social function. *See Temparali*, 1997 WL 361019 at *1. She alleged that she became upset and distraught as a result of the rape, and "completely insane." *See id.* The court noted that "[w]hile conduct outside the workplace and work hours ordinarily does not create a hostile work environment. . . . an employee who is forced to work . . . in proximity to someone who is harassing her outside the workplace may reasonably perceive the work environment to be hostile as a result." Id. at *2, *citing Candelore v. Clark County Sanitation District, supra.* However, Temparali never worked with her alleged rapist, their offices were thousands of miles apart, and "the conduct occurred outside the place and scope of employment after the parties were socializing in a bar and plaintiff was 'quite intoxicated.'" *Id.* at *3. Therefore, the court concluded that the plaintiff was not subjected to a hostile environment by virtue of the rape.

As indicated, in this case. Plaintiff admits that she and Keith never worked together either before or after the alleged rape. Thus, while the rape can be considered to be unwelcome by Plaintiff and based on her sex, as the District Court found. Plaintiff has failed to show that the alleged rape by Keith altered the terms and conditions of her employment or created a hostile work environment.

In addition to the alleged rape. Plaintiff's complaints of offensive conduct by Defendant include not being paid for all the hours she worked; being scheduled for too many hours; having to work in production when she preferred working in service; managers being rude when asked questions by employees; the General Manager leaving work during working hours to get drunk; being offended by an argument between two employees; and being offended by the relationships and dating among

employees. As the District Court found, Plaintiff has presented no direct or circumstantial evidence to show that any of these incidents of "offensive conduct" were perpetrated based upon Plaintiff's sex. Indeed, the only instance of offensive conduct complained of by Plaintiff that is even related to sex is her complaint of relationships and dating among her co-workers. However, as the District Court noted, Plaintiff admitted in her deposition that she herself was engaged in a consensual relationship with a co-worker, Chris Hollon. Therefore, she cannot reasonably argue that such conduct was subjectively offensive to her. *See Black v. Zaring Homes,* 104 F.3d 822, 826 (6th Cir.1997), *cert. denied,* 522 U.S. 865, 118 S.Ct. 172, 139 L.Ed.2d 114 (1997).

Considering the totality of the evidence of offensive conduct presented by Plaintiff, the Court finds that Plaintiff has failed to establish that these incidents resulted in a sexually hostile work environment as a matter of law.

## IV. CONCLUSION

For the foregoing reasons, the District Court's denial of Plaintiff's Motion to Amend and its grant of Defendant's Motion for Summary Judgment are AFFIRMED.