NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a0160n.06

No. 12-3663

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED

Feb 13, 2013

LEONARD GREEN, Clerk

|  |  |  |
|---|---|---|
| PATRICIA WRIGHT; | ) | |
| GLENN WRIGHT; | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| BANK OF AMERICA, N.A., as | ) | DISTRICT OF OHIO |
| Successor by Merger and as Trustee on | ) | |
| behalf of La Salle Bank, N.A., on behalf | ) | |
| of WAMU Mortgage Pass Through | ) | |
| Certificate Series 2006-AR19 Trust | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: SUHRHEINRICH, MOORE and GIBBONS, Circuit Judges.


**SUHRHEINRICH, Circuit Judge.** Patricia K. Wright and Glenn Wright (the "Wrights")

appeal the United States District Court for the Southern District of Ohio's grant of summary

judgment to the Bank of America ("BOA") in this diversity action for breach of contract, negligence,

and fraud. The Wrights also appeal the district court's grant of summary judgment to BOA on

BOA's counterclaim to enforce a foreclosure debt.

## I. Background

In February 2009, BOA initiated foreclosure proceedings in the Court of Common Pleas in

Hamilton County against the Wrights after they defaulted on their mortgage for a parcel of real

property located at 7329 Waterpoint Lane, in Cincinnati, Ohio (the "Residence"). In addition to

seeking foreclosure, BOA sought to recover a monetary judgment for the Wrights' failure to make payments on their mortgage loan. The court granted summary judgment in favor of BOA, and BOA subsequently sold the Residence in a sheriff's sale, then bought it back for $525,000. This left a sizeable deficiency from the $649,007.48 owed to BOA, which the Wrights have not yet paid.

Following the sale, BOA informed Ed McTigue, the Wrights' attorney, that the Wrights needed to remove their personal property. On March 4, 2010, BOA posted a "Personal Property Notice" on the Residence informing the Wrights that they had until April 8, 2010, to remove the personal property, and that "[a]ny personal property that remains on the premises after April 8, 2010, will be thrown away or otherwise disposed of without any further notice." BOA also sent the "Personal Property Notice" to McTigue, who forwarded it to the Wrights.

In the meantime, the Wrights approached Tim Atteberry, a Florida mortgage broker, with a proposal to buy back the Residence. Atteberry contacted a paralegal named Kate McCarthy, who worked for the law firm that represented BOA in the foreclosure proceedings against the Wrights. Atteberry made two offers for purchase, but BOA did not respond to either offer.

On April 7, 2010, apparently believing that their purchase would eventually be completed, the Wrights and Atteberry contacted McCarthy about their personal property. They requested that the Wrights be permitted to leave their personal property in the Residence, and after checking with BOA, McCarthy informed Atteberry that the Wrights could leave their personal property in the Residence. Following the telephone conversation, Kate McCarthy sent Tim Atteberry an email, stating in pertinent part:

> I just wanted to confirm our conversation with you. I just confirmed with our client and the agent is aware the furniture is to stay in the property. Like I said, the property preservation crew will likely change the locks and winterize (if necessary), but the

furniture will be left in the property. Our eviction file for this property should be closed later this week and you will be working with Tom Singer for the resale of the property.

The Wrights did not pay BOA or offer collateral in return for the retainment of the personal property left in the Residence.

In the three months following the April 7, 2010 conversation, the Wrights did not attempt to contact BOA about their personal property. On or about July 6, 2010, BOA sold the home to Joseph and Tracy Heller (the "Hellers"). Although at the time of the sale, the personal property was still in the Residence, the sale contract was specifically for the Residence, not the personal property. The Wrights learned of the sale when they stopped by the Residence in August 2010 and found the Hellers living there with the Wrights' personal property.

## II.    Procedural Posture

### A.    Claim and Counterclaim

The Wrights initiated this lawsuit asserting claims against BOA for breach of contract and negligence, claiming that the April 7, 2010 email formed a legal duty by BOA to retain the Wrights' personal property until the Wrights choose to retrieve it. The Wrights also asserted a fraud claim alleging that BOA made fraudulent misrepresentations in the April 7, 2010 email. In response, BOA asserted a counterclaim, requesting that the district court enforce the monetary judgment BOA obtained in state court against the Wrights in the foreclosure suit.[1]

---

[1]BOA sought $258,694.79, including interests and other fees allowed by the foreclosure judgment. The district court held a hearing to determine the deficiency between the proceeds from the sheriff's sale and the judgment amount, and determined that the Wrights owed a total of $297,751.40.

3

The district court ultimately granted summary judgment in favor of BOA on all of the Wrights' claims, including a bailment contract claim that the Wrights had advanced for the first time in their opposition to summary judgment. The district court also granted summary judgment in favor of BOA on the counterclaim. The Wrights now appeal.

### III.    Standard of Review

We review a district court's order granting a motion for summary judgment *de novo*. We review a district court's decision not to allow an amendment of the complaint for abuse of discretion. *Duggins v. Steak & Shake, Inc.*, 3 F. App'x 302, 307 (6th Cir. 2001). A federal court sitting in diversity action must apply the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Hatcher v. Gen. Elec.*, 208 F.3d 213 (6th Cir. 2000).

### IV.    Analysis

#### A.    Breach of Contract

The Wrights alleged, in their complaint, a breach of contract claim. The alleged contract is identified as the email sent by McCarthy to Atteberry on April 7, 2010. In order to succeed on their breach of contract claim under Ohio law, the Wrights must first prove that a valid contract existed between the Wrights and BOA. *See Alpha Telecomm., Inc. v. Int'l Bus. Mach. Corp.*, 194 F. App'x 385, 388 (6th Cir. 2006) (applying Ohio state law to a breach of contract claim). A valid contract exists if there is an offer, acceptance, and consideration. *Prendergast v. Snoeberger,* 796 N.E.2d 588, 592 (Ohio Ct. App. 2003). The Wrights argue that the consideration for the alleged contract took the form of "ongoing negotiations" for BOA to sell the property back to the Wrights, and also that BOA might have benefitted from showing a furnished house to prospective buyers. However, there is no evidence that these supposed benefits were bargained for — as a matter of fact, BOA

4

behaved wholly indifferently to these supposed benefits. Because there was no evidence of consideration, the Wrights cannot establish the existence of a valid contract, and therefore their breach of contract claim must fail.

In the Wrights' opposition to summary judgment, the Wrights also advanced a bailment theory as part of their breach of contract claim. The district court refused to address the bailment theory because it was not raised in a timely manner.

In any event, the claim would fail because no bailment contract was formed. A bailment contract, like all other contracts, requires "a meeting of the minds as to the terms and conditions." *George v. Whitmer*, 2006 Ohio 436, at ¶17 (Ohio Ct. App. 2006) (citations omitted). The Wrights have not alleged facts to demonstrate a meeting of the minds. There is no evidence in the record to suggest that BOA agreed to take delivery, that there was any time-frame for the bailment, that there were any conditions for safeguarding the property, nor that there was any "particular purpose" for the bailment. *Id.* at ¶15 (holding that a bailment is a delivery of personal property to another to hold in trust for a particular purpose).

### B. The Wrights' Claim for Negligence

The Wrights alleged that BOA negligently sold and discarded the personal property. However, this claim was correctly disposed of in summary judgment because it is impermissibly duplicative of the Wrights' breach of contract claim. "Generally, the existence of a contract action excludes the opportunity to present the same case as a tort claim." *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 684 N.E.2d 1261, 1270 (Ohio Ct. App. 1996)) (quoting *Wolfe v. Continental Cas. Co.*, 647 F.2d 705, 710 (6th Cir. 1981)). The Wrights have not provided evidence, nor even alleged, that BOA took on a duty to preserve the personal property outside of the alleged contract.

5

## C. The Wrights' Claim for Fraud

The Wrights also asserted that BOA committed fraud by reneging on its representation—made through McCarthy—that it would keep the personal property at the Residence for the Wrights. However, the district court properly ruled against the Wrights because although McCarthy wrote that "the furniture is to stay in the property," there is absolutely no evidence in the record that McCarthy intended to mislead the Wrights with this statement. *See Watson v. City of Cleveland,* 202 F. App'x 844, 857 (6th Cir. 2006) (affirming the trial court's summary judgment ruling in favor of the defendant on a fraud claim because the plaintiff "presented no evidence that the defendants had an intent to defraud"). There is no evidence that BOA intended or attempted to keep the Wrights' personal property; the record makes it clear that the Wrights could have retrieved their personal property at any time. In fact, the Wrights had over three months to retrieve the personal property—three months *in addition* to the original time frame of four months that BOA gave the Wrights to remove their personal property after the foreclosure.

Furthermore, the district court deemed Wrights' reliance on McCarthy's email to be unreasonable. As the district court noted, the Wrights apparently believed that (1) McCarthy's email gave them permission to leave their personal property in the Residence indefinitely; (2) even though BOA never responded to Atteberry's offers or answered his phone calls, that BOA was interested in selling the Residence to Atteberry; and (3) even though the Wrights defaulted on their mortgage and owed a substantial money judgment to BOA, that BOA would sell the Residence to their proxy at a further substantial loss. In light of the absence of any evidence of intent to mislead the Wrights, we need not address this point.

**D.      Motion for Summary Judgment on BOA's Counterclaim**

The district court granted BOA's motion for summary judgment on its counterclaim against the Wrights.  In its counterclaim, BOA sought to enforce its state court judgment, updating the amount due  for the accrual of interest on the judgment.  Federal courts are authorized to enforce state court judgments. *See Berke v. Northcutt*, 798 F.2d 468, 468 (6th Cir. 1986) (holding that "a federal court must enforce a state court judgment" under the full faith and credit statute where diversity jurisdiction exists).  Therefore, BOA's motion for summary judgment was properly granted.

**E.      Denial of the Wrights' Motion for Leave to Amend Pleadings**

The Wrights filed a motion for leave to amend their complaint to add a new claim of promissory estoppel.  The motion was untimely, filed ten months after the court's deadline for amending pleadings.  The Wrights also failed to show good cause for their delay, their only justification being that their counsel did not discover the new claim earlier.  Therefore, the district court did not abuse its discretion by denying the Wrights' motion for leave to amend.

## V.   Conclusion

For the foregoing reasons, we AFFIRM the order of the district court.