[Cite as *Wright v. Heller*, 2018-Ohio-149.]

# IN THE COURT OF APPEALS

## FIRST APPELLATE DISTRICT OF OHIO

## HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| PATRICIA WRIGHT, | : | APPEAL NO. C-160897 |
| **and** | : | TRIAL NO. A-1403169 |
| GLENN WRIGHT, | : | |
| Plaintiffs-Appellants, | : | *O P I N I O N.* |
| vs. | : | |
| JOSEPH HELLER, | : | |
| TRACY HELLER, | : | |
| HUFF-DREES REALTY, d.b.a. HUFF REALTY, | : | |
| | : | |
| THOMAS J. SINGER, | : | |
| and | : | |
| CHRISTOPHER PARCHMAN, | : | |
| Defendants-Appellees, | : | |
| and | : | |
| REGAL FIELD SERVICES, LLC, et al., | : | |
| Defendants. | : | |

Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal:  January 17, 2018

*The Schneider Law Firm, LLC*, and *Louis C. Schneider*, for Plaintiffs-Appellants,

*Lindhorst & Dreidame*, *Christopher H. Hurlburt* and *James Brockman*, for Defendants-Appellees Joseph and Tracy Heller,

*Faulkner & Tepe, LLP*, *John C. Scott* and *Tracy E. Schwetschenau* for Defendant-Appellee Huff-Drees Realty, Inc.,

*Arnzen, Molloy, Storm, & Turner, P.S.C.*, and *Aaron A. Vanderlann* for Defendant-Appellee Huff-Drees Realty, Inc.,

*Smith Rolfes & Skavdahl Company, L.P.A.*, and *Carmen Sarge* for Defendants-Appellees Thomas J. Singer and Christopher Parchman.

**ZAYAS, Presiding Judge.**

{¶1}   Plaintiffs-appellants Glenn and Patricia Wright ("Wrights") appeal from the trial court's grant of summary judgment in favor of defendants-appellees Joseph and Tracy Heller ("Hellers"), Huff-Drees Realty, Inc., d.b.a. Huff Realty ("Huff"), Thomas Singer, Christopher Parchman, and Nationwide REO Brokers, Inc., ("Nationwide") in a case regarding the removal, disposal, and retention of the personal property that the Wrights failed to retrieve from their former home at 7329 Waterpoint Lane following a foreclosure. We affirm the judgment of the trial court because res judicata barred the Wrights from asserting these claims against the defendants.

### The Factual Basis of the Federal Law Suit

{¶2}   In February 2009, Bank of America ("BOA") foreclosed on a home owned by Glenn and Patricia Wright. The sheriff sold the property back to the bank in December 2009. The Wrights never removed their personal property from the home. After the sale, the bank informed the Wrights in writing numerous times that their property must be removed from the home, to no avail. On March 4, 2010, BOA posted a "Personal Property Notice" on the home informing the Wrights that any property that was not removed by April 8, 2010, would be disposed of without further notice. The notice was also mailed to and received by the Wrights.

{¶3}   The Wrights, through broker Tim Atteberry, made two attempts to repurchase the home. Atteberry made offers in January and March 2010, but BOA never responded to the offers. On April 7, 2010, Atteberry spoke with Kate McCarthy, a paralegal who worked for Manley Deas Kolchalski, L.L.C., the law firm that represented BOA. Atteberry represented that he had a potential buyer for the property who was interested in purchasing the furniture with the home. Atteberry did not disclose to McCarthy that the Wrights were the potential buyers. After conferring with BOA, McCarthy sent an email confirming that the furniture would remain on the property and

instructing Atteberry to conduct future negotiations with Tom Singer, the listing agent from Huff Realty.

{¶4} After April 7, 2010, the Wrights never followed up with BOA regarding their personal property. In the meantime, Atteberry contacted Singer who did not negotiate with Atteberry. BOA sold the property to the Hellers in July 2010. When the Wrights visited the home in August 2010, they learned it had been sold to the Hellers.

{¶5} Four months later, the Wrights filed suit against BOA in the United States District Court for the Southern District of Ohio asserting state-law claims for breach of contract, negligence, and fraud, claiming they were wrongfully deprived of their personal property because BOA had a lawful duty to protect the property until the Wrights chose to retrieve it, BOA failed to retain the property, and BOA conveyed the personal property to the Hellers.

### The Federal Court Proceedings

{¶6} In the district court, the Wrights alleged that BOA had agreed to secure and maintain their personal property, BOA had breached the agreement by discarding the property and allowing it to be turned over to the Hellers, the Wrights' demands for recovery of the personal property had been refused, and the Wrights had been deprived of the ownership and benefit of their personal property. The Wrights further alleged that BOA "was negligent in fulfilling" its duty to maintain custody and control over the property, and that BOA had falsely misrepresented its intent to maintain and secure the property.

{¶7} After discovery, the district court granted BOA's motion for summary judgment finding that BOA did not enter into a contract with the Wrights to allow them to leave their property in the home, and that any alleged permission to maintain the personal property in the home was contingent solely on the successful repurchase of the home by Atteberry on behalf of the Wrights. The court further found that the Wrights were not in negotiations to purchase the property, and that they should have known well before July

2010 that BOA would not sell the property to Atteberry. Once the Wrights knew that they could not repurchase the home, they should have taken active steps to retrieve their belongings. Instead, the Wrights sat passively and did nothing to protect their interests. They made no attempt to contact BOA or retrieve their personal belongings after April 7, 2010, and BOA did not have a duty to protect or preserve their personal property.

{¶8}   The Wrights appealed to the Sixth Circuit Court of Appeals, which affirmed the District Court's judgment. *See Wright v. Bank of Amr.*, 517 Fed.Appx. 304 (6th Cir.2013). In reaching its decision, the court concluded that

> There is no evidence that BOA intended or attempted to keep Wrights' personal property; the record makes it clear that the Wrights could have retrieved their personal property at any time. In fact, the Wrights had over three months to retrieve the personal property – three months in addition to the original time frame of four months that BOA gave the Wrights to remove their personal property after the foreclosure.

*Id.* at 307.

### The Factual Basis of the Second Lawsuit

{¶9}   After the Wrights lost the suit in federal court, they filed a second suit based on the same underlying facts. Again they alleged that they had permission to leave the personal property in the house because they were in negotiations with BOA to repurchase the house, and that they were unlawfully deprived of their personal property. However, this time, they alleged claims of conversion against the Hellers, Huff Realty, Huff agents Thomas Singer and Christopher Parchman, Nationwide, and Regal Field Services and its owners Shane and Kathleen Klaber, and sought compensatory and punitive damages. The Wrights also alleged claims of replevin and unjust enrichment against the Hellers.

{¶10}  The day after BOA purchased the home, JP Morgan Chase Bank ("Chase"), the servicing agent for BOA, assigned the marketing and sale of the home to Nationwide,

an asset disposition company located in Braintree, Massachusettes. Nationwide assigned Huff Realty and Huff agents Singer and Parchman to market and sell the home. Huff had a contractual agreement to provide these services for properties handled by Nationwide as the agent for bank owned properties.

{¶11} After receiving the assignment, Huff agents inspected the home and informed Nationwide the house contained furniture and personal items. Nationwide notified counsel for BOA, and, in February 2010, BOA sent three letters requesting that the Wrights remove their personal property from the home. On March 4, 2010, counsel for BOA instructed Nationwide to post a "Personal Property Notice" on the home informing the Wrights that any property that was not removed by April 8, 2010, would be disposed of without further notice. Huff posted the notice at the request of Nationwide, and McCarthy provided the notice to the Wrights.

{¶12} On April 7, 2010, McCarthy sent an email to Nationwide instructing them that the home would be sold with the furniture because Atteberry had a buyer who wished to purchase the furniture with the home. Nationwide was instructed by McCarthy not to trash the furniture when the April 8, 2010 deadline had passed. Nationwide, Huff, Singer, and Parchman followed these instructions. BOA also instructed Nationwide to box up all the small, personal items that remained in the home and put them in the garage.

{¶13} After McCarthy told Atteberry the furniture would remain in the home, Atteberry spoke with Singer three or four times in April and early May. Singer informed Atteberry that he could not entertain any offers until he received authorization to list the property. Neither Atteberry or Wright contacted Singer after May 4, 2010. The Hellers purchased the property in July 2010.

{¶14} The Hellers' purchase contract reflected that Tom Singer and Huff Realty were acting as agents for BOA, and that BOA reserved the right to dispose of or leave any personal property at its discretion. Shortly before the closing, Parchman informed the

Hellers that BOA may leave some of the property in the home instead of trashing it. On June 22, 2010, Field Asset Services removed the garbage from the garage. When the Hellers closed on the home on July 6, 2010, BOA exercised its contractual right to leave the personal property in the home. The Hellers moved into the property on July 24, 2010, and spent the next two weeks discarding all of the trash. They donated some of the remaining items to charity, and kept the rest.

{¶15} On August 14, 2010, the Wrights visited the home and learned that the house had been sold to the Hellers. Two and a half months later, the Wrights sent a letter to the Hellers asking them to call the Wrights if they did not want any of the property and wanted to give the Wrights an opportunity to recover it. The Hellers' counsel contacted the Wrights' attorney, who indicated that the Wrights did not want any of the personal property, and that the Wrights were going to sue BOA. The Wrights' attorney requested that the Hellers cooperate with the Wrights in their suit against BOA. When the Hellers were deposed in September 2011 for the BOA lawsuit, they gave the Wrights two boxes of family photos that they had salvaged.

### The Proceedings in the Second Lawsuit

{¶16} All of the defendants filed answers and asserted, among other affirmative defenses, that res judicata and collateral estoppel barred the Wrights from raising these claims and issues again.

{¶17} After discovery, all of the defendants filed motions for summary judgment alleging that the claims were barred by res judicata, and more specifically, claim preclusion. The trial court granted the motions for summary judgment, finding that res judicata barred the plaintiffs' claims. The Wrights appealed, raising six assignments of error. However, the Wrights did not appeal the judgment granting summary judgment to Nationwide.

### Standard of Review

{¶18} Under Civ.R. 56(C), summary judgment is appropriate when, looking at

the evidence as a whole (1) there is no genuine issue as to any material fact, (2) reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, and therefore, (3) the moving party is entitled to judgment as a matter of law. Civ.R. 56(C); *Horton v. Harwick Chem. Corp.*, 73 Ohio St.3d 679, 686-687, 653 N.E.2d 1196 (1995). If any doubts exist, the issue must be resolved in favor of the nonmoving party. *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356, 358-359, 604 N.E.2d 138 (1992).

### Res Judicata

{¶19}   In their first assignment of error, the Wrights argue that the trial court erred when granting summary judgment to all of the appellees based on res judicata because none of the appellees were parties to the federal case or in privity with the original party.

{¶20}   Res judicata requires that a party to a lawsuit must present every ground for relief in that action or be forever barred from asserting any additional grounds. *Natl. Amusements, Inc. v. Springdale,* 53 Ohio St.3d 60, 62, 558 N.E.2d 1178 (1990). It is well established that "an existing final judgment or decree between the parties to litigation is conclusive as to all claims which were or might have been litigated in a first lawsuit." *Rogers v. Whitehall,* 25 Ohio St.3d 67, 69, 494 N.E.2d 1387 (1986).

{¶21}   Res judicata encompasses two related concepts: (1) claim preclusion, also known as res judicata or estoppel by judgment, which prevents a subsequent action by the same parties based upon any claim arising out of the transaction that was the subject of a previous action; and (2) issue preclusion, or collateral estoppel, which bars relitigation in a second action of an issue that has been actually and necessarily litigated and determined in a prior action that was based on a different cause of action. *See O'Nesti v. DeBartolo Realty Corp.,* 113 Ohio St.3d 59, 2007-Ohio-1102, 862 N.E.2d 803, ¶ 6; *State ex rel. Schachter v. Ohio Pub. Emps. Retirement Bd.,* 121 Ohio St.3d 526, 2009-Ohio-1704, 905 N.E.2d 1210, ¶ 27.

{¶22} Claim preclusion requires proof of the following four elements: (1) there was a prior valid judgment on the merits; (2) the second action involved the same parties or their privies as the first action; (3) the present action raises claims that were or could have been litigated in the prior action; and (4) both actions arise out of the same transaction or occurrence.

{¶23} The Wrights do not dispute that there was a previous valid judgment, the present action raises claims that could have been litigated in the federal action, and that both actions arise from the same occurrence. The Wrights sole challenge is to the trial court's determination that all of the defendants were in privity with BOA. Therefore, we must determine whether each defendant in the second action is in privity with BOA.

{¶24} The Ohio Supreme Court has explained that "[w]hat constitutes privity in the context of res judicata is somewhat amorphous. A contractual or beneficiary relationship is not required [.]" *Brown v. Dayton*, 89 Ohio St.3d 245, 248, 730 N.E.2d 958 (2000). The court further explained that, "In certain situations * * * a broader definition of 'privity' is warranted. As a general matter, privity is merely a word used to say that the relationship between the one who is a party on the record and another is close enough to include that other within the res judicata." (Internal citations omitted.) *Id.*

{¶25} A party is in "privity" with another if "he succeeds to an estate or an interest formerly held by the other," *City of Columbus v. Union Cemetary Assn.*, 45 Ohio St.2d 47, 51, 341 N.E.2d 298 (1976), or where a party is so identified in interest with another that the party represents the same legal right. *See Deaton v. Burney*, 107 Ohio App.3d 407, 413, 669 N.E.2d 1 (2d Dist.1995). "[A] mutuality of interest, including an identity of desired result," may also create privity between parties. *Brown* at 248.

### Privity of Huff Realty and Agents Tom Singer and Chris Parchman

{¶26} The Wrights first argue that Huff and its agents, Singer and Parchman, were not in privity with BOA because their contractual relationship was with BOA's loan

servicing agent Chase, and BOA was not in privity with Chase. Courts have determined that privity exists between a loan servicing agent and a mortgage company. *See Wicker v. Seterus, Inc.*, W.D.Texas No. EP-15-CV-331-KC, 2016 WL 2622017, *5 (May 5, 2016) (concluding that "privity exists between preceding and succeeding owners of property," and "assignees and servicing agents of a loan are in privity with an original mortgage company"); *Ernest v. CitiMortgage, Inc.*, W.D.Texas No. SA:13-CV-802-DAE, 2014 WL 294544, *4 (Jan. 22, 2014). *See also Shore v. Wilmington Trust, N.A. for MFRA Trust 2015-1*, S.D.Florida No. 16-25373-CIV-COHN/SHELTZER, 2017 WL 1494509, *4 (April 20, 2017); *Taylor v. Sturgell*, 553 U.S. 880, 894, 128 S.Ct. 2161, 171 L.Ed.2d 155 (2008) (explaining that "nonparty preclusion may be justified based on a variety of pre-existing 'substantive legal relationship[s]' between the person to be bound and a party to the judgment" such as preceding and succeeding owners of property). Accordingly, Chase is in privity with BOA.

{¶27} The record further demonstrates that Huff Realty, Singer, and Parchman were acting as agents for BOA, and it is well-settled law "that a principal-agent relationship satisfies the privity requirement of res judicata where the claims alleged are within the scope of the agency relationship." *ABS Industries, Inc. v. Fifth Third Bank*, 333 Fed.Appx. 994, 999 (6th Cir.2009), citing *Cook v. Criminger,* 9th Dist. Summit No. 22313, 2005-Ohio-1949, ¶ 20 (holding that res judicata precluded consideration of state claims against individual university employees based on the same conduct that formed the basis for prior federal claims resolved in favor of the state university because the state action concerned the employees' actions as agents of the university and hence established privity); *Waddell v. Boldman,* 4th Dist. Adams No. 01CA721, 2002-Ohio-4229, ¶ 23 (holding that the defendant contractual employee was in privity with the plaintiff's former husband, through an agency relationship, and thus, a prior divorce action resolving issues regarding the timbering of land had res judicata effect against the

10

plaintiff in her subsequent action alleging that the defendant cut timber on the land without authorization); *Ferrara v. Vicciarelli Funeral Servs., Inc.*, 2016-Ohio-5144, 69 N.E.3d 171, ¶ 19 (8th Dist.) (concluding that privity was established between funeral home, employee, and independent contractor because all actions taken by employee and independent contractor were on behalf of the funeral home).

{¶28} Here, BOA specifically informed Atteberry and Glenn Wright that any further negotiations to purchase the property were to be done through Huff Realty and Tom Singer. Wright admitted that he received a notice that Huff and Singer were BOA's agents working on behalf of BOA. At all times, Huff, Singer, and Parchman followed BOA's instructions with respect to the personal property and acted within the scope of the agency relationship, and the contract for sale indicated that Huff and Singer were acting as agents for BOA. Additionally, Huff, Singer, and Parchman shared a mutuality of interest and common desired result with BOA with regard to the sale of the home. Therefore, for purposes of res judicata, Huff, Singer and Parchman are in privity with BOA.

### *Privity of Joseph and Tracy Heller*

{¶29} Next, the Wrights argue that the trial court erred in concluding that the Hellers were in privity with BOA. Although the Wrights acknowledge that privity may be established by successors to property interests, they argue it is inapplicable here because they did not raise a conversion claim against BOA in the first action, and the personal property was not sold to the Hellers as the Wrights initially believed.

{¶30} However, res judicata operates to "extinguish a claim by the plaintiff against the defendant even though the plaintiff is prepared in the second action (1) To present evidence or grounds or theories of the case not presented in the first action, or (2) To seek remedies or forms of relief not demanded in the first action." *Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.,* 81 Ohio St.3d 392, 395, 692 N.E.2d 140 (1998). Thus, an attempt to litigate the same claim using a new theory, grounds, evidence or form of relief will not circumvent res judicata if the Hellers are in privity with

BOA.

{¶31}   Nonparty preclusion may be justified based on a variety of preexisting "substantive legal relationship[s]" between the person to be bound and a party to the judgment, such as preceding and succeeding owners of property.  *Taylor*, 553 U.S. at 894, 128 S.Ct. 2161, 171 L.Ed.2d 155.  "[S]uccessive ownership interests in the same property are sufficient to sustain the flow of privity."  *Union Cemetery Assoc.*, 45 Ohio St.2d at 51, 341 N.E.2d 298.

{¶32}   In this case, privity between BOA and the Hellers is established because the Hellers are succeeding owners of the same property.  At the time of the filing of the federal action, the Wrights were well aware that the Hellers had purchased the home from BOA, that their personal belongings had been left in the home, and that the Hellers retained the personal property.  Raising several claims, the Wrights alleged that BOA unlawfully disposed of the personal property by allowing it to remain in the home after the Hellers had purchased the home.  The Wrights, who could have included a conversion claim against BOA in the federal action, cannot circumvent res judicata by attempting to litigate this claim against the Hellers because they are in privity with BOA.

{¶33}   Therefore, we must overrule this assignment of error.  Accordingly, we do not reach the remaining five assignments of error because they are moot.

{¶34}   The judgment of the trial court is affirmed.

Judgment affirmed.

**MILLER** and **DETERS, JJ.,** concur.

Please note:

This court has recorded its own entry this date.

12