RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 22a0131p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

BUSINESS DEVELOPMENT CORPORATION OF SOUTH
CAROLINA,

      *Plaintiff-Appellant*,

    *v.*

RUTTER & RUSSIN, LLC; ROBERT P. RUTTER; JUSTIN P.
RUDIN; GALLAGHER, GAMS, TALLAN, BARNES &
LITTRELL, LLP; MARK HOWARD GAMS; STATE FARM
FIRE & CASUALTY COMPANY,

      *Defendants-Appellees*.

> No. 21-3673

─────────────────

Appeal from the United States District Court for the Northern District of Ohio at Cleveland.
No. 1:19-cv-02609—J. Philip Calabrese, District Judge.

Argued:  March 18, 2022

Decided and Filed:  June 16, 2022

Before:  SILER, CLAY, and MURPHY, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:**  Paul R. Kerridge, KEATING, MUETHING & KLEKAMP, PLL, Cincinnati, Ohio, for Appellant.  Holly Marie Wilson, REMINGER CO., L.P.A., Cleveland, Ohio, for Rutter & Russin Appellees.  Richard G. Witkowski, NICOLA, GUDBRANSON & COOPER, LLC, Cleveland, Ohio, for Gallagher, Gams, Tallan, Barnes & Littrell Appellees.  Jason R. Goldschmidt, DINSMORE & SHOHL, LLP, Cincinnati, Ohio, for Appellee State Farm Fire & Casualty.  **ON BRIEF:**  Paul R. Kerridge, James E. Burke, KEATING, MUETHING & KLEKAMP, PLL, Cincinnati, Ohio, for Appellant.  Holly Marie Wilson, REMINGER CO., L.P.A., Cleveland, Ohio, for Rutter & Russin Appellees.  Richard G. Witkowski, Nicholas J. Dertouzos, NICOLA, GUDBRANSON & COOPER, LLC, Cleveland, Ohio, for Gallagher, Gams, Tallan, Barnes & Littrell Appellees.  Jason R. Goldschmidt, Gregory A. Harrison, DINSMORE & SHOHL, LLP, Cincinnati, Ohio, for Appellee State Farm Fire & Casualty.

———————————

**OPINION**

———————————

MURPHY, Circuit Judge.  Parties who fail to assert their rights during the litigation of a case sometimes seek to belatedly raise those rights in a collateral attack on the court's judgment. This strategy usually does not end well—as Business Development Corporation of South Carolina (BDC) has come to learn.  BDC held a mortgage on a home that had been damaged. The home's owners sued their insurer in Ohio state court when the insurer denied coverage for the damage.  They named BDC as a defendant because of its interest in the insurance proceeds. For reasons known only to BDC, it chose not to appear in the case.  After the homeowners and insurer settled, the state court found that BDC had no right to the proceeds.  When BDC learned of this result, it did not seek relief from the judgment in the state court.  Rather, it filed this federal suit alleging that the insurer, its lawyers, and the homeowners' lawyers all colluded to defraud it.  The district court dismissed the suit under Ohio's claim-preclusion law.  Because BDC cannot meet the demanding test required to attack the state court's judgment in this collateral fashion, we affirm.

I

BDC lent $800,000 to a company owned by Steven and Elizabeth Sugg.  The Suggs personally guaranteed this loan and secured it with a $200,000 mortgage on their home in Shaker Heights, Ohio.  Two other lenders (Bank of America and MidFirst Bank) held more senior mortgages on the home.

The Suggs' home unfortunately suffered serious water damage from a burst pipe during a cold winter day in February 2014.  State Farm Fire and Casualty Co. insured the home for up to $352,130.  The Suggs filed a claim with State Farm to recover for the damage.  State Farm denied the claim on the ground that the Suggs had failed to heat their home at a temperature required by their policy.

In January 2015, the Suggs sued State Farm in an Ohio state court.  They alleged that State Farm had breached the insurance policy and acted in bad faith by denying coverage.

The Suggs also sued all three lenders with mortgages on their home—Bank of America, MidFirst Bank, and BDC. Their complaint explained that these lenders "have an interest in the policy proceeds" because the policy entitled them to payment even if State Farm had a valid defense against the Suggs. Compl., R.7-1, PageID 117. It described each lender as "an interested and necessary party to this lawsuit." *Id.*

During the state-court litigation, Rutter & Russin, LLC, and its attorneys, Robert P. Rutter and Justin P. Rudin, represented the Suggs. (We will refer to these defendants collectively as the "Rutter Firm" because their distinctions do not matter now.) Gallagher, Gams, Tallan, Barnes & Littrell, LLP, and its attorney, Mark Gams, represented State Farm. (We will similarly refer to these defendants as the "Gallagher Firm.")

The Suggs served State Farm and the three lenders. BDC decided not to appear. A BDC lawyer told the Rutter Firm that BDC viewed itself as a "nominal" party, not a necessary one. Email, R.7-3, PageID 171. The BDC lawyer gave the Rutter Firm information that the firm requested and asked "to be kept advised" of the suit in exchange. Compl., R.1, PageID 16. The Rutter Firm allegedly agreed.

For months, attorneys for both sides voluntarily sent their filings to the non-appearing BDC. But things changed in October 2015. The parties stopped serving BDC at that point while they worked out a $365,000 settlement.

The Suggs, through the Rutter Firm, moved to enforce this settlement. The motion, which was not sent to BDC, noted that the Suggs had settled with State Farm and that the "only remaining issue" concerned the logistics: To whom should State Farm make out the checks and for what amounts? Mot., R.7-3, PageID 135. The Suggs agreed to use the settlement to pay off Bank of America's and MidFirst's mortgages. But the Suggs disputed BDC's right to any amount for three reasons: because BDC did not sue (or file a crossclaim against) State Farm within the policy's limitations period, because BDC did not appear, and because BDC lacked a right to any settlement amount under the policy's terms. The Suggs asked the court to enter an order adopting this conclusion. State Farm responded that it was "constrained by the policy

language to include BDC" in the settlement unless the court ordered otherwise.  Resp., R.7-4, PageID 174.

Ultimately, the state court entered the Suggs' requested order.  On November 18, 2015, the court handwrote into a proposed order that BDC "has no right to the settlement proceeds and State Farm is within its rights to exclude BDC from any settlement payments."  Order, R.7-5, PageID 176.  The court directed State Farm to pay $13,500 to Bank of America, $78,281.81 to MidFirst, and $273,218.19 to the Rutter Firm as trustees for the Suggs.

BDC asserts that it first learned of this order thirteen months later in December 2016.  Yet BDC waited nearly three more years to challenge the state-court settlement by filing this federal suit against the Rutter Firm, the Gallagher Firm, and State Farm.  BDC alleged one general claim against all of these defendants: that they committed an "abuse of process" by excluding it from the settlement.  BDC also alleged several individual claims.  It reraised the claims against State Farm that the Suggs had litigated: that State Farm breached the policy and engaged in a bad-faith denial of coverage.  BDC next alleged several claims against the Rutter Firm (which had represented the Suggs): that the firm converted the settlement; that it fraudulently asserted that it would keep BDC informed of the state-court litigation; that it should be liable under a promissory estoppel theory for this failed promise; that it tortiously interfered with BDC's contract with State Farm; and that it had been unjustly enriched.  BDC lastly alleged one individual claim against the Gallagher Firm (which had represented State Farm): that it also tortiously interfered with BDC's contract with State Farm.

The district court granted the defendants' motions for judgment on the pleadings.  It ruled that claim preclusion barred all of BDC's claims.  *See Bus. Dev. Corp. of S.C. v. Rutter & Russin, LLC*, 2021 WL 2766043, at *2–3 (N.D. Ohio July 2, 2021); *Bus. Dev. Corp. of S.C. v. Rutter & Russin, LLC*, 2021 WL 1295062, at *6–10 (N.D. Ohio Apr. 7, 2021).  We review these decisions de novo.  *See Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 479 (6th Cir. 2020); *Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 519 (6th Cir. 2011).

II

A federal court must give the same "full faith and credit" to a state court's judgment that this judgment would receive in the state's own courts.  28 U.S.C. § 1738.  This command means that we must look to Ohio law to identify the effect that the state court's earlier judgment has on BDC's federal case.  *See CHKRS, LLC v. City of Dublin*, 984 F.3d 483, 490 (6th Cir. 2021).  Like most courts, Ohio courts follow the well-known doctrines of claim preclusion (res judicata) and issue preclusion (collateral estoppel).  *See id.*  This case concerns Ohio's claim-preclusion rules.

The Ohio Supreme Court's current approach to claim preclusion dates to *Grava v. Parkman Township*, 653 N.E.2d 226 (Ohio 1995), which jettisoned a narrow preclusion test in favor of the Restatement's broader one.  *Id.* at 228–30 (citing Restatement (Second) of Judgments §§ 24–25 (Am. L. Inst. 1982)).  Ohio courts have since described claim preclusion this way: "a final judgment or decree, rendered on the merits by a court of competent jurisdiction, is a complete bar to any subsequent action on the same claim between the same parties or those in privity with them."  *State ex rel. Kendrick v. Parker*, 158 N.E.3d 573, 574 (Ohio 2020) (per curiam) (citation omitted).

We have separated this test into four elements.  *See Hapgood v. City of Warren*, 127 F.3d 490, 493 (6th Cir. 1997); *see also Portage Cnty. Bd. of Comm'rs v. Akron*, 846 N.E.2d 478, 495 (Ohio 2006).  To begin with, a court with jurisdiction must have issued a "final" judgment on the "merits."  *See Hapgood*, 127 F.3d at 493.  In addition, the first and second suits must involve the same "transaction."  *See id.*  Next, the second suit must assert legal theories that were or could have been raised in the first suit.  *See id.*  Lastly, the second suit must involve the same parties or those in "privity" with these parties.  *See id.*  We consider each of these elements in turn.

A.  Final Judgment on the Merits

Most basically, claim preclusion may apply only if the state court in the Suggs' earlier suit rendered a "final" judgment on the merits.  *See id.*  At first glance, this element seems easily met.  The state court had jurisdiction over the Suggs' insurance claim and over the parties, and it issued a final judgment ordering State Farm to distribute the insurance proceeds to the Suggs

(not BDC) under the parties' settlement.  Order, R.7-5, PageID 176; Dkt., R.7-2, PageID 132. Although the court's judgment merely enforced a settlement, Ohio courts have long treated these types of judgments as on the "merits" for preclusion purposes.  *See In re Gilbraith*, 512 N.E.2d 956, 959 (Ohio 1987); *see also McAdams v. Mercedes-Benz USA, L.L.C.*, 162 N.E.3d 755, 760 (Ohio 2020).

Not so fast, BDC responds.  It points to a disclaimer in Ohio caselaw that a judgment must have been "rendered" "without fraud or collusion" to have preclusive effect.  *Grava*, 653 N.E.2d at 228 (citation omitted).  And here, BDC says, the Rutter Firm, the Gallagher Firm, and State Farm colluded to obtain the judgment through fraud.  Although the district court held that BDC failed to state a fraud claim, *Bus. Dev. Corp.*, 2021 WL 1295062, at *6–7, BDC criticizes the court for failing to apply the proper standard of review at this pleading stage.  Besides, Ohio courts treat claim preclusion as an affirmative defense.  *See State ex rel. Green v. Wetzel*, 140 N.E.3d 586, 588 (Ohio 2019) (per curiam).  Parties generally do not need to "negate" such a defense in their complaint.  *Perry v. Merit Sys. Prot. Bd.*, 137 S. Ct. 1975, 1986 n.9 (2017); *Jones v. Bock*, 549 U.S. 199, 216 (2007).  So we opt not to resolve this argument on the district court's grounds.

Nevertheless, we see a more fundamental legal problem with BDC's fraud response—one that we find proper to consider at this pleading stage.  *Cf. Est. of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013).  Whether or not BDC adequately alleged fraud, it has raised this fraud defense in the wrong court and the wrong case.  Ohio provides a specific process to challenge a suit's final judgment on fraud grounds: a party may file a motion for relief from judgment under Ohio Civil Rule 60(B).  And we do not think that the Ohio Supreme Court would permit BDC to bypass Rule 60(B) by raising its fraud defense to preclusion in this separate suit.

Start with the way that BDC should have raised its fraud defense.  Under Rule 60(B), a party with a "meritorious defense or claim" may move to reopen the judgment in the court that entered it if the party can establish one of the rule's grounds.  *GTE Automatic Elec., Inc. v. ARC Indus., Inc.*, 351 N.E.2d 113, 116 (Ohio 1976).  Rule 60(B) allows a party to seek relief for fraud in two ways.  Rule 60(B)(3) permits relief due to the "fraud" or "misrepresentation" "of an

adverse party." Rule 60(B)(5)—which allows a court to reopen a judgment for "any other reason justifying relief"—permits relief due to "fraud on the court," including fraud by an attorney. *Coulson v. Coulson*, 448 N.E.2d 809, 811–12 (Ohio 1983). A party must file a motion under these provisions "within a reasonable time," but Rule 60(B)(3) also comes with a strict one-year time limit. Ohio Civ. R. 60(B). Notably, claim preclusion would not bar these direct attacks on a judgment (as long as the allegations could not have been raised in a direct appeal). *See Coulson*, 448 N.E.2d at 813; *Wingenfeld v. Wingenfeld*, 1993 WL 497074, at *4 (Ohio Ct. App. Dec. 2, 1993); *see also PennyMac Corp. v. Godinez*, 474 P.3d 264, 268–70 (Haw. 2020) (collecting authorities).

Because Rule 60(B) provides detailed procedures for challenging a judgment, Ohio courts have been reluctant to grant relief from the judgment in other ways. When considering alternative requests for relief within the *same* case, the courts have held that they lack any inherent authority to set aside their judgments for reasons other than those listed in Rule 60(B) or in ways different from those prescribed by the rule. *See EMC Mortg. Co. v. Atkinson*, 2011 WL 193366, at *1–2 (Ohio Ct. App. Jan. 12, 2011); *Cale Prods., Inc. v. Orrville Bronze & Aluminum Co.*, 457 N.E.2d 854, 857–58 (Ohio Ct. App. 1982). And when considering requests for relief in a *different* case, the courts have generally refused to upset a prior case's judgment in a collateral attack that alleges that the judgment had been obtained through fraud. *See Lanza v. Lanza*, 2020 WL 7495444, at *4–5 (Ohio Ct. App. Dec. 21, 2020); *Buckingham v. Buckingham*, 113 N.E.3d 1093, 1096–97 (Ohio Ct. App. 2018); *Granata v. Stamatakos*, 2013 WL 6708412, at *4 (Ohio Ct. App. Dec. 17, 2013); *Pomaro v. Pomaro*, 1976 WL 188550, at *2–3 (Ohio Ct. App. Mar. 24, 1976). They have reasoned that they would render Rule 60(B) "meaningless" if litigants could freely bypass the rule by bringing a "fraud" attack in a separate case instead. *Buckingham*, 113 N.E.3d at 1097.

Admittedly, the Ohio Supreme Court allowed collateral attacks based on fraud before it adopted the Civil Rules. *See Ohio Pyro, Inc. v. Ohio Dep't of Com.*, 875 N.E.2d 550, 556 (Ohio 2007) (citing pre-Rule 60(B) cases). But that court has yet to address the interaction between Rule 60(B), a collateral attack on fraud grounds, and claim preclusion. And it routinely looks to the Restatement of Judgments and common-law authorities to resolve preclusion questions.

*See Bradley v. Reno*, 749 F.3d 553, 557 (6th Cir. 2014); *State ex rel. Coles v. Granville*, 877 N.E.2d 968, 977 (Ohio 2007) (per curiam); *Grava*, 653 N.E.2d at 229. These authorities support the Ohio decisions that prohibit parties from ignoring Rule 60(B) by attacking an earlier judgment in a later case. The Restatement explains that a party generally "must" seek relief from a judgment under Rule 60(b). Restatement (Second) of Judgments § 78. So courts generally should not "consider the merits of an attack on a judgment when that attack is made in the course of a subsequent action in which the judgment is relied on as a basis of [a] claim or defense." *Id.* § 80 cmt. a. The Restatement permits these collateral attacks only in "limited" circumstances—such as when the traditional methods for seeking relief (for example, a Rule 60(b) motion) are "unavailable" to the party. *Id.* § 80 & cmt. a.

Federal practice conforms to this approach. Before adoption of the Federal Rules of Civil Procedure, courts allowed an "independent" equitable action to overturn a judgment. *See United States v. Beggerly*, 524 U.S. 38, 45 (1998); 11 Charles A. Wright et al., *Federal Practice and Procedure* § 2868, at 556–57 (3d ed. 2012). Federal Rule 60 (unlike Ohio's equivalent) still expressly permits such "an independent action to relieve a party from a judgment[.]" Fed. R. Civ. P. 60(d)(1). Nevertheless, now that Rule 60(b) allows a party to assert fraud challenges against a judgment in the same case, the Supreme Court has adopted a "demanding standard" to permit this collateral attack. *Beggerly*, 524 U.S. at 47. Courts may grant relief only "to prevent a grave miscarriage of justice." *Id.* And the misconduct that might justify relief under Rule 60(b)(3) will not necessarily meet this more stringent test. *Id.*

This reluctance to consider collateral attacks outside Rule 60(B)'s confines makes sense. As a matter of efficiency, the approach channels fraud challenges to the court that managed the earlier case. That court will have the records from the case and be best positioned to know whether fraud affected its judgment. *See* 18 James W. Moore, *Moore's Federal Practice* § 131.30[1][c] (3d ed.), Lexis (database updated 2022). Here, for example, the state court is better situated than we are to answer whether the parties and attorneys defrauded BDC by having the court enter an order excluding it from the settlement. As a matter of comity, this approach avoids the need for one court to "grade" another's decision. *See* Restatement (Second) of Judgments § 78 cmt. a. These comity concerns are particularly acute in this case since BDC asks

a federal court to overturn a state court's judgment without ever seeking relief in that court. *Cf. Williams v. Taylor*, 529 U.S. 420, 436–37 (2000); *Lundborg v. Phoenix Leasing, Inc.*, 91 F.3d 265, 272–73 (1st Cir. 1996).

The pleadings also show that BDC cannot meet the "demanding standard" necessary for its collateral attack. *Beggerly*, 524 U.S. at 47. With full knowledge of the Suggs' suit, BDC decided not to appear even though the complaint described it as "an interested and necessary party[.]" Compl., R.7-1, PageID 117. BDC's complaint in this suit also makes clear that it did not bother to monitor the docket of the Suggs' suit. And it never moved for relief from the judgment in that suit under Rule 60(B). BDC thus was not without some "fault." 11 Wright, *supra*, § 2868, at 559–60 & 560 n.12. If anything, its "own carelessness" largely explains its predicament. *Campaniello Imps., Ltd. v. Saporiti Italia S.p.A.*, 117 F.3d 655, 662 (2d Cir. 1997). So even if BDC's fraud allegations might have provided grounds for relief under Rule 60(B), they are legally insufficient to show the "grave miscarriage of justice" that would permit this collateral attack outside Rule 60(B). *Beggerly*, 524 U.S. at 47; *Buckingham*, 113 N.E.3d at 1097.

None of the cases on which BDC relies proves the contrary. It cites unpublished Ohio cases that state that fraud allegations provide a basis to avoid claim preclusion. But this precedent does not suggest that litigants may simply ignore Rule 60(B). Rather, the courts found that the fraud allegations lacked merit, so they had no need to address the proper procedure for raising these sorts of fraud claims. *See, e.g.*, *Kobal v. Edward Jones Sec.*, 2021 WL 1235200, at *7 (Ohio Ct. App. Apr. 1, 2021); *Faught v. Faught*, 1988 WL 141103, at *1 (Ohio Ct. App. Dec. 22, 1988).

BDC also argues that Rule 60(B) relief was "unavailable" to it. Restatement (Second) of Judgments § 80. That is so, BDC claims, because it allegedly did not learn of the fraud until a year after the judgment and Rule 60(B)(3) sets a one-year time limit for raising fraud allegations. We see three problems with this argument. For one thing, BDC asserts that the parties' attorneys engaged in the fraud. Those claims qualify as "fraud on the court" and trigger Rule 60(B)(5)'s catchall, which has no strict time limit. *See Coulson*, 448 N.E.2d at 812.

For a second, BDC could have timely filed a Rule 60(B) motion even if it could assert its fraud claim only under Rule 60(B)(3). The docket shows that the state court did not formally dismiss the Suggs' suit until February 2016, and BDC admits that it learned of the settlement's terms by December of that year. Dkt., R.7-2, PageID 132; *cf. Condos. at Stonebridge Owners' Ass'n v. Patton*, 2009 WL 1564784, at *1 (Ohio Ct. App. June 4, 2009). Although BDC claims that the court's earlier order approving the settlement in November 2015 should really qualify as the final judgment under Ohio law, this entire debate about the meaning of an esoteric state final-judgment rule shows why this claim belongs in state court.

For a third, even if BDC could not have filed a timely motion under Rule 60(B)(3), Ohio courts have rejected claims that a timeliness problem automatically allows parties to collaterally attack the judgment on fraud grounds outside Rule 60(B). That result would render the rule's time limits "meaningless." *Buckingham*, 113 N.E.3d at 1097. Yet those limits serve important finality interests, so the Ohio Supreme Court has enforced them even when later events proved that a case's outcome was indisputably wrong. *Strack v. Pelton*, 637 N.E.2d 914, 916 (Ohio 1994). We thus doubt that the court would permit the rule to be eviscerated in the way that BDC seeks in this case. In sum, BDC must accept the state court's judgment as final in this separate suit.

## B. Same Transaction

We also may apply claim preclusion only if BDC's suit grows out of the same "transaction" as the Suggs' suit. *Grava*, 653 N.E.2d at 229. The Ohio Supreme Court takes a fact-based approach to what counts as a "transaction," defining the word to mean a "common nucleus of operative facts." *Id.* (quoting Restatement (Second) of Judgments § 24 cmt. b). Under this definition, suits asserting different legal theories, relying on different evidence, or seeking different remedies can arise from the same "transaction" if they concern the same general fact pattern. *See U.S. Bank Nat'l Ass'n v. Gullotta*, 899 N.E.2d 987, 991 (Ohio 2008); *Grava*, 653 N.E.2d at 229. To decide whether the facts across two cases fall within a single transaction, Ohio courts use a "logical relation" test. *Rettig Enters., Inc. v. Koehler*, 626 N.E.2d 99, 103 (Ohio 1994). The test asks whether litigating each claim separately "would involve a

substantial duplication of effort and time by the parties and the courts." *Id.*; *cf.* Restatement (Second) of Judgments § 24(2).

BDC's case comes with an added wrinkle to this typical "transaction" inquiry. Claim preclusion usually arises when *the same plaintiff* loses a first suit and seeks to litigate a second one. *See Gullotta*, 899 N.E.2d at 991; *Kirkhart v. Keiper*, 805 N.E.2d 1089, 1091 (Ohio 2004); *Grava*, 653 N.E.2d at 229–30. Here, by contrast, the Suggs were the plaintiffs in the first suit; BDC was a *defendant*. Despite this wrinkle, courts have applied "defendant preclusion" if a defendant-turned-plaintiff raises a claim in a second suit that arises from the same fact pattern as the first suit. 18 Charles A. Wright et al., *Federal Practice and Procedure* § 4414, at 345 (3d ed. 2016). When does this type of suit meet Ohio's "transaction" test? The Ohio Supreme Court has little caselaw on the topic, so we again look to the Restatement. *See Bradley*, 749 F.3d at 557. It notes that a defendant who fails to assert a claim in a first suit will be "precluded" from maintaining a second suit on the claim in two circumstances. Restatement (Second) of Judgments § 22(2).

Circumstance One: Preclusion will apply if the defendant-turned-plaintiff should have filed the second suit's cause of action as a "counterclaim" in the first suit under a "compulsory counterclaim statute or rule of court[.]" *Id.* § 22(2)(a). This circumstance does not apply here. Ohio Civil Rule 13(A) requires a defendant to assert a compulsory counterclaim against a plaintiff if, among other things, "it arises out of the transaction or occurrence that is the subject matter" of the plaintiff's claim. BDC did not bring a "counterclaim" against the Suggs at all, and its claims against State Farm (a codefendant) would qualify as permissive "cross claims." Ohio Civ. R. 13(G). In addition, when identifying the "transaction" for this compulsory-counterclaim rule, the Ohio Supreme Court has distinguished the facts from which the first suit *arises* from the parties' litigating conduct *during* the suit. *See Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 626 N.E.2d 115, 119 (Ohio 1994). An abuse-of-process claim, for example, requires a party to litigate a suit for an improper purpose. *See id.* at 118. The court has held that the defendant to the abusive suit generally need not raise an abuse-of-process claim as a compulsory counterclaim. *Id.* at 118–19. Rather, it may defend against the case and then file a second abuse-of-process suit. *Id.* at 119.

Circumstance Two: Even if no court rule would require a defendant to assert a claim in the first suit, preclusion still applies if the "relationship" between the defendant-turned-plaintiff's claim in the second suit "and the plaintiff's claim" in the first "is such that successful prosecution of the second action would nullify the initial judgment or would impair rights established in the initial action." Restatement (Second) of Judgments § 22(2)(b). The pragmatic "transaction" test thus prevents a defendant-turned-plaintiff from filing a second suit merely to attack the first suit's judgment. So, for example, a defendant could not file a second suit raising a "restitution" theory to recover the funds that it paid as a result of the first suit's judgment. *Id.* § 22 cmt. f; *see also* 18 Wright, *supra*, § 4414, at 352; *Cadle Co. v. Reiner, Reiner & Bendett, P.C.*, 307 F. App'x 884, 889–90 (6th Cir. 2009); *A.B.C.G. Enters., Inc. v. First Bank Se., N.A.*, 515 N.W.2d 904, 907–09 (Wis. 1994).

Ohio cases comport with this approach. On the one hand, Ohio courts sometimes hold that a second suit involves a different "transaction" when it challenges conduct that occurred during the litigation of the first suit. Critically, however, the relief sought in these cases was consistent with—not contrary to—the first judgment. *See Davis v. Wal-Mart Stores, Inc.*, 756 N.E.2d 657, 659 (Ohio 2001); *see also Yaklevich*, 626 N.E.2d at 116, 119; *Hall v. Tucker*, 829 N.E.2d 1259, 1271–72 (Ohio Ct. App. 2005). In *Davis*, for example, a plaintiff successfully prosecuted a wrongful-death action against Wal-Mart for the death of her husband, a Wal-Mart employee. 756 N.E.2d at 658. During the litigation, the plaintiff determined that Wal-Mart had withheld evidence. *Id.* She thus filed a second action for spoliation of evidence. *Id.* The Ohio Supreme Court held that claim preclusion did not apply because Wal-Mart's conduct in failing to disclose evidence was a distinct "transaction" from its conduct in causing an employee's death. *Id.* at 659. But the plaintiff had won that first action; she was not seeking to undermine it. *See id.* at 658.

On the other hand, Ohio courts have held that a party's second suit falls within the same "transaction" as the first one if the suit seeks relief that "would necessarily vacate or modify" the prior suit's judgment. *Keen v. Keen*, 811 N.E.2d 565, 567 (Ohio Ct. App. 2004); *see Buckingham*, 113 N.E.3d at 1096. In *Buckingham*, for example, a husband and wife litigated their divorce proceedings to a final judgment. 113 N.E.3d at 1094. The wife later brought

another suit alleging fraudulent-concealment and spoliation-of-evidence claims against her husband for hiding assets during the earlier proceedings. *Id.* The Ohio court reasoned that claim preclusion barred the wife's suit (and that the trial court lacked jurisdiction over it) because the "damages she [sought] effectively would modify the relief that was granted by the domestic relations division in the divorce decree." *Id.* at 1096.

Under these rules, BDC's suit arises from the same transaction. For starters, some of BDC's claims against State Farm—those for breach of contract and bad-faith denial of coverage—are identical to the claims litigated by the Suggs. These claims are not just "offshoots" of the "same basic controversy"; they *are* the "same basic controversy[.]" *Koehler*, 626 N.E.2d at 103.

BDC's remaining claims—whether labeled abuse of process, tortious interference with contract, fraud, or anything else—all challenge the litigating conduct of the parties and attorneys in the Suggs' suit. These claims are more like those found precluded in *Buckingham* than those allowed to proceed in *Davis*. If BDC successfully proved its claims, these claims would "nullify" the judgment from the Suggs' suit and "impair" the rights "established" by the suit's outcome. Restatement (Second) of Judgments § 22(2)(b). Both State Farm and the Suggs obtained a binding judgment that BDC was not entitled to any portion of the insurance proceeds. Now, however, BDC seeks the opposite judgment—that it was, in fact, entitled to those proceeds. Thus, BDC cannot win this case without our court holding that the Suggs' earlier case was wrongly decided. And BDC's suit would compel State Farm to pay the same claim twice because BDC seeks most of "the amount" that State Farm "paid" to the Suggs "pursuant to the [earlier] judgment[.]" *Id.* § 22 cmt. f. In short, BDC cannot prove the torts alleged in this suit without obliterating the earlier judgment. Its claims thus involve the same "transaction." *Cf. Berkshire Invs., LLC v. Taylor*, 278 P.3d 943, 952–53 (Idaho 2012); *Chaara v. Lander*, 45 P.3d 895, 898–99 (N.M. Ct. App. 2002).

### C. Cause of Action that Could Have Been Litigated

Claim preclusion next applies only if BDC could have litigated in the Suggs' suit the causes of action that it has raised in this one. *See Grava*, 653 N.E.2d at 229. This element does

not require BDC to have raised these causes of action in that suit. *See id.* Nor does it require BDC to have even known of the causes of action. Its negligence in failing to discover a claim does not stop preclusion so long as it *could have* asserted that claim by exercising reasonable diligence. *See* 46 Am. Jur. 2d Judgments § 517, Westlaw (database updated May 2022); *cf. Adair v. State*, 680 N.W.2d 386, 397 (Mich. 2004); *Sutphin v. Speik*, 99 P.2d 652, 655 (Cal. 1940). BDC only needed to have had the ability to assert its causes of action in the earlier suit through "all the proper means within [its] control[.]" *Nat'l Amusements, Inc. v. City of Springdale*, 558 N.E.2d 1178, 1180 (Ohio 1990) (citation omitted). In this way, preclusion serves its purposes by forcing a party "to present every ground for relief in the first action, or be forever barred from asserting it." *Id.*

Two examples show how this element works. Suppose a movie theater loses an equal-protection suit against a city's tax. *See id.* at 1179. The theater may not later bring a free-speech suit seeking identical relief, even if the theater did not think of the free-speech claim in the first suit and even if subsequent caselaw has made that claim more viable. *See id.* at 1181. Suppose, by contrast, a business that leases movie posters to theaters settles an antitrust claim against an alleged monopolist. *See Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 323–24 (1955). The business may later challenge monopolistic conduct that occurred after the first case ended because it could not have raised in that case a claim that "did not even . . . exist" at the time of its final judgment. *Id.* at 328; *State ex rel. Jones v. Husted*, 73 N.E.3d 463, 468 (Ohio 2016).

BDC is more like the movie theater than the movie-poster business. It has pointed to no legal impediment that would have barred it from raising its claims in the Suggs' suit. It indisputably could have brought its breach-of-contract and bad-faith claims against State Farm in that suit—since those claims existed from the *start*. And while BDC's other claims arose during the suit, they had ripened by the *end* (unlike the claims in *Lawlor*). So BDC could have raised them in the suit if it had exercised reasonable diligence—by, for example, appearing in the case. *Cf. Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 817–18 (6th Cir. 2010). BDC's abuse-of-process claim proves this point. Although the Ohio Supreme Court has noted that this type of claim generally is not a compulsory counterclaim to an abusive suit, the court has also clarified that a defendant *may* assert the claim in that same suit. *See Yaklevich*, 626 N.E.2d at 119.

Nothing about the claim or its elements required BDC to wait for a final judgment. *See id.* BDC likewise identifies nothing about its other claims (or their elements) that would have required a final judgment in the Suggs' case. *Cf. id.* at 119 n.4; *see also Davis*, 756 N.E.2d at 660.

At the least, BDC learned of these claims at a time when it could have filed a Rule 60(B) motion. So it could have raised them that way. BDC responds that any ability to file a Rule 60(B) motion does not prove that it could have litigated its claims in the prior suit. But many courts have relied on the right to file a Rule 60(b) motion as a reason to apply preclusion. *See Granata*, 2013 WL 6708412, at *4; *see also Weldon v. United States*, 70 F.3d 1, 5 (2d Cir. 1995); *Horwitz v. Alloy Auto. Co.*, 992 F.2d 100, 104 (7th Cir. 1993); *Regions Fin. Corp. v. Marsh USA, Inc.*, 310 S.W.3d 382, 394–96 (Tenn. Ct. App. 2009). BDC adds that Rule 60(B) permitted it to raise only its fraud claim, not its other claims. Yet fraud offers the gateway through which a party may assert other claims in this motion. BDC still needed to show that it had a "meritorious defense or claim to present if relief" were granted due to the fraud. *GTE Automatic*, 351 N.E.2d at 116. So it could have raised these other causes of action as the grounds for its allegedly "meritorious" defense. *Id.*

## D. Same Parties or Privies

State Farm, the Rutter Firm, and the Gallagher Firm lastly may invoke claim preclusion against BDC only if they were all parties in the Suggs' suit or in "privity" with one of the parties. *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio 2007). BDC concedes that State Farm meets this element because BDC and State Farm were both parties in the prior litigation. But the Rutter Firm and Gallagher Firm represented clients in that litigation; they were not parties themselves. This element thus hinges on whether the law firms were in "privity" with their clients.

The Ohio Supreme Court has described privity in this preclusion context as "somewhat amorphous" because the court has departed from the word's traditional understanding in favor of a "broad definition[.]" *State ex rel. Schachter v. Ohio Pub. Emps. Ret. Bd.*, 905 N.E.2d 1210, 1217 (Ohio 2009) (per curiam) (quoting *Brown v. City of Dayton*, 730 N.E.2d 958, 962 (Ohio 2000), and *Kirkhart*, 805 N.E.2d at 1092). To be in privity, two parties need not have a

contractual connection or one rooted in estate law (such as a grantor-beneficiary relationship). *See Brown*, 730 N.E.2d at 962; *Thompson v. Wing*, 637 N.E.2d 917, 923 (Ohio 1994). They need only have "a mutuality of interest, including an identity of desired result." *Brown*, 730 N.E.2d at 962. That is, the parties must share a "close enough" relationship that it would serve preclusion law's purposes to apply the doctrine even though the parties are technically distinct. *Id.*; *Thompson*, 637 N.E.2d at 923.

Under this broad test, Ohio courts have repeatedly held that privity exists between a principal and an agent for actions taken "within the scope of the agency relationship." *ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*, 333 F. App'x 994, 999 (6th Cir. 2009) (collecting cases); *Wright v. Heller*, 102 N.E.3d 1285, 1292–93 (Ohio Ct. App. 2018). The Ohio Supreme Court, for example, has held that the government is in privity with its agents, so a party cannot challenge the same conduct twice simply by suing a different government actor in each suit. *See State ex rel. Johnson v. Bureau of Sentence Computation*, 152 N.E.3d 251, 255 (Ohio 2020); *cf. Kirkhart*, 805 N.E.2d at 1092–94; *State v. Williams*, 667 N.E.2d 932, 936 (Ohio 1996).

More relevantly, Ohio courts have applied this agency rule to find privity between attorneys and their clients when a second suit against the attorneys involved actions that they took on behalf of their clients. *See Huber Heights Veterans Club, Inc. v. Bowman*, 2021 WL 5144545, at *7 (Ohio Ct. App. Nov. 5, 2021); *533 Short N. L.L.C. v. Zwerin*, 2015 WL 5771924, at *8 (Ohio Ct. App. Sept. 30, 2015); *Bell v. Nichols*, 2013 WL 3193682, at *15 (Ohio Ct. App. June 20, 2013). Take *Huber Heights*. There, a veterans' organization successfully sued a local chapter for violating its bylaws. 2021 WL 5144545, at *1. The chapter later sued an attorney for the organization. *Id.* at *2–3. The court held that claim preclusion barred this suit because the attorney was "clearly acting as [the organization's] agent" when engaging in the challenged conduct. *Id.* at *7. And parties cannot avoid preclusion merely "by changing the name" of the individuals that they sue. *Id.* at *8.

Or take *Bell*. There, landowners unsuccessfully challenged a government appropriation. 2013 WL 3193682, at *3–5. They then sued, among others, the lawyer (and firm) that represented the government in the appropriation suit. *Id.* at *5–6. The court found this suit precluded. *Id.* at *15. It reasoned that the suit was "simply an attempt to attack the [prior]

decision from a different angle, by attempting to attack the parties involved in representing" a prior litigant. *Id.*

This logic reaches the Rutter and Gallagher Firms. BDC alleges that those firms colluded with their clients to defraud it of the insurance proceeds. There is no dispute that the clients themselves (the Suggs and State Farm) would satisfy this preclusion element. And there is no dispute that the firms were "acting as . . . agent[s]" of the clients when litigating the prior suit. *Huber Heights*, 2021 WL 5144545, at *7. The attorneys and clients also "share[d] a mutuality of interest and desired result" in that suit. *533 Short N.*, 2015 WL 5771924, at *8. Just as in these other cases, then, we cannot allow BDC to avoid preclusion merely by suing the attorneys of the litigants involved in the prior suit. *See Huber Heights*, 2021 WL 5144545, at *8.

BDC responds that a "mutuality" of interests can exist for privity purposes only if the nonparty to the earlier suit "would have been bound by [the judgment in that suit] had the result been the opposite." *O'Nesti*, 862 N.E.2d at 806 (citation omitted). BDC adds that mutuality (and so privity) cannot exist under this test because a judgment for BDC in the Suggs' suit would not have bound the law firms. Yet the Ohio Supreme Court has applied preclusion against nonparties to the first suit (and so found them in privity with parties) even when these nonparties would not have been formally bound by the earlier judgment. *See, e.g.*, *Brown*, 730 N.E.2d at 961. And the Ohio decisions that extend privity to principal-agent relationships (including our decision in *ABS*) have not asked whether a judgment in the earlier suit would have bound the nonparty agent. *See, e.g.*, *ABS*, 333 F. App'x at 999–1000; *Wright*, 102 N.E.3d at 1292. Indeed, such a requirement could categorically exclude these principal-agent relationships from privity—a result that would upend "well settled" Ohio preclusion law. *ABS*, 333 F. App'x at 999.

BDC next cites decisions from other states holding that an attorney-client relationship does not create privity. *See Lane v. Bayview Loan Servicing, LLC.*, 831 S.E.2d 709, 715 (Va. 2019); *Rucker v. Schmidt*, 794 N.W.2d 114, 119 (Minn. 2011). But these decisions "narrowly construe privity" in this context. *Lane*, 831 S.E.2d at 715. Ohio takes a "broad" view of the doctrine. *Kirkhart*, 805 N.E.2d at 1092. And the courts that follow Ohio's broad approach have likewise used preclusion law to bar parties from suing attorneys for their representations of clients. *See Berkshire*, 278 P.3d at 951–52; *Jayel Corp. v. Cochran*, 234 S.W.3d 278, 281–84

(Ark. 2006); *Simpson v. Chi. Pneumatic Tool Co.*, 693 N.W.2d 612, 616–18 (N.D. 2005); *Chaara*, 45 P.3d at 897; *cf. Plotner v. AT&T Corp.*, 224 F.3d 1161, 1169 (10th Cir. 2000).

BDC also suggests that Ohio treats privity as a fact question unsuited for resolution on the pleadings. But it fails to identify any factual dispute that could matter to the outcome. That omission distinguishes this case from those on which it relies. *See Charvat v. GVN Mich., Inc.*, 2010 WL 2706163, at *5–6 (Ohio Ct. App. July 8, 2010); *Pheils v. Garber-Lawrence Publ'g Grp., Inc.*, 1993 WL 513200, at *14 (Ohio Ct. App. Dec. 10, 1993). In *Charvat*, the court held that a fact question existed over whether an agency relationship existed. 2010 WL 2706163, at *5–6. Here, by contrast, BDC does not dispute that the law firms were agents of their clients. In *Pheils*, the court held that a plaintiff could not hold a client liable for her lawyer's abuse of process if the lawyer acted "without the knowledge or consent of the client[.]" 1993 WL 513200, at *15. Yet the court addressed neither preclusion nor privity. Regardless, BDC disclaimed any allegation that the law firms "acted without their client's knowledge." Appellant's Br. 37.

* * *

The Ohio Supreme Court has long balanced the interest in deciding all litigation correctly against the interest in ensuring that it comes to an end. *See Strack*, 637 N.E.2d at 916. If we were to allow BDC's collateral attack, it would upend the balance that the court has struck. Because BDC failed to avail itself of Ohio procedure to seek the relief it now requests, we affirm.