KESSLER et al.

v.

TOTUS TUUS, L.L.C., et al., Appellees; Harris et al., Appellants.

[Cite as *Kessler v. Totus Tuus, L.L.C.,* 185 Ohio App.3d 240, 2009-Ohio-6376.]

Court of Appeals of Ohio,
Eleventh District, Ashtabula County.

No. 2007–A–0093.

Decided Dec. 4, 2009.

Zashin & Rich Co., L.P.A., Jonathan A. Rich, and Robert M. Fertel; and Curry and Pasqualone and Gary L. Pasqualone, for appellees.

William P. Bobulsky Co., L.P.A., and William P. Bobulsky, for appellants.

---

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} After a trial to the bench, the Ashtabula County Court of Common Pleas entered a final judgment declaring a lease held by appellants, Mark Harris et al., for certain real property void. Appellants now appeal that judgment, and for the reasons discussed infra, we affirm the trial court's judgment.

{¶ 2} On September 4, 2002, appellee Marlene Harris ("Marlene") filed for divorce from Gary Harris ("Gary") in Cuyahoga County, Ohio. A year later, on September 2, 2003, they were divorced. In that proceeding, the Cuyahoga County Domestic Relations Court found that Gary and Marlene owned significant real estate, mostly in Ashtabula County, all of which was deemed marital

property. One such parcel was described as 247 and 265 Daniels Avenue. Gary and Marlene Harris, by way of Marlene, obtained an interest in this property in 1998. In May 2002, Marlene assigned this interest to a trust estate entitled 3740 Holding Trust. The record indicates that 3740 Holding Trust was created for the benefit of Marlene's and Gary's children.

{¶ 3} Despite the purported purpose of 3740 Holding Trust, the domestic court ruled that it, as well as various other trust estates and corporations, were merely sham constructs used by Gary to conduct his own personal affairs. The domestic court consequently ruled that Gary was the true owner of the assets held in the names of the multiple fictitious entities over which he exercised complete control. As a result, most of the assets owned by Gary's alter egos were deemed marital assets subject to a judicial property distribution. In its final judgment entry, the assets and properties of the fictitious constructs were divided between the parties. In the distribution, Marlene was awarded the real property designated 247 and 265 Daniels Avenue in the final divorce decree.[1] It does not appear that Gary appealed the domestic court's final judgment on divorce.

{¶ 4} On March 28, 2005, Tamara S. Kessler, then Gary's wife, filed a complaint in the Ashtabula County Court of Common Pleas to quiet title on three properties not involved in the instant appeal. Appellees Marlene and Totus Tuus, L.L.C. (an entity formed by Marlene), filed an answer, counterclaim, cross-claims, and third-party claims. Appellees named Gary, d.b.a. 3740 Holding Trust, as well as Mark and Mary Harris, as third-party defendants. Appellees sought a declaratory judgment and an order quieting title to the premises occupied by Mark and Mary Harris at 247 and 265 Daniels Avenue ("the property"). Mark and Mary Harris filed an answer and cross-claim seeking damages for the conversion of personal property and seeking specific performance of a lease that they had signed with what was formerly known as 3740 Holding Trust.

{¶ 5} The parties filed motions for summary judgment on their mutual claims pertaining to the property. On February 9, 2007, the trial court overruled the motions. In its judgment entry, the court accepted the domestic court's finding that 3740 Holding Trust was merely an alter ego of Gary. The court's conclusion had the legal effect of rendering that issue res judicata. Notwithstanding this conclusion, the court reasoned that there was a genuine issue of material fact as to whether the doctrine of equitable estoppel applied to preclude Marlene from attempting to void the lease. That is, the court determined that Marlene's assignment of her interest in the property to the trust some 16 months before the

---

1. The divorce decree also indicated that Gary had engaged in financial misconduct during the marriage, including failing to pay taxes or evading the payment of over $1,000,000 from 1997 through 2003. Prior to the final entry of divorce, Gary was federally indicted and is now serving prison time.

final divorce decree created a question of fact regarding whether her action to void the lease was initiated with "clean hands." The court observed that "equity requires that whenever a party takes the initiative to set into motion the judicial machinery to obtain some remedy but has violated good faith by her prior related conduct, the [c]ourt will deny the remedy." Accordingly, the court concluded that there was a triable issue regarding "[w]hether Marlene acted unfairly to the detriment of Mark and Mary Harris, whether she was an accomplice [to] dupe, or something else in assigning her interest in [the property] to 3740 Holding Trust."

{¶ 6} A bench trial was held on June 18, 2007. Although the February 9, 2007 judgment entry ostensibly limited the issue to whether Marlene was estopped by principles of equity from having the lease declared void, additional testimony was taken to support the conclusion that the lease should be held legally void.

{¶ 7} On November 20, 2007, the court entered judgment in favor of Marlene, ruling that the doctrine of equitable estoppel did not apply to preclude Marlene's legal action. The court further concluded that the lease between 3740 Holding Trust and appellants was void. The court found:

{¶ 8} "Marlene was married to Gary Harris and testified that she had not been involved in Mr. Harris' affairs after 1998. There was no testimony that either Marlene Harris, nka Gray, or Mark Harris knew that the 3740 Holding Trust was a sham or fictitious entity when the lease was signed in August of 2003. Mark Harris testified that he had no knowledge of the assignment from Marlene to 3740 Holding Trust and, therefore, he could not have relied upon that assignment when he entered into the lease. There was no evidence of any false representation, implicitly or explicitly, by Marlene, which induced reliance on the part of Mark Harris.

{¶ 9} "It also appears the lease was executed while the divorce was pending in Cuyahoga County between Marlene and Gary Harris and, therefore, the doctrine of *Lis Pendens,* pursuant to Ohio Revised Code 2703.26, applies."

{¶ 10} The court subsequently ordered appellees' counsel to prepare a judgment entry to quiet title to the property in favor of Totus Tuus. On December 10, 2007, the entry was filed. The trial court held that Totus Tuus would own the property in fee simple and be entitled to the quiet and peaceful possession of the property. The court further held that Mark and Mary Harris have no interest in the property and that they be permanently enjoined and restrained from asserting any claim to the personal property that was subject to the void lease with 3740 Holding Trust. Finally, the court ordered that its judgment had the effect of a conveyance of the property and consequently could be recorded by the county auditor and county recorder.

{¶ 11} Mark and Mary Harris filed this timely appeal from the December 10, 2007 judgment, asserting two assignments of error. Their first assignment of error proposes:

{¶ 12} "The trial court erred in holding the lease between appellants, Mark and Mary Harris, and 3740 Holding Trust to be void."

{¶ 13} Appellants assert several arguments in support of their first assignment of error. We shall initially address appellants' assertion that the trial court erred when it determined that Marlene was not precluded by operation of equitable estoppel from denying the validity of the lease between themselves and 3740 Holding Trust.

{¶ 14} With respect to this issue, appellants argue that Marlene is estopped from attempting to nullify a lease that was the fruit of her May 2002 assignment. In effect, appellants maintain that Marlene is now taking a position contrary to one with which she had previously acquiesced, contrary to principles of equity.

{¶ 15} Equitable estoppel arises when there is a concern that a party has acted in such a way that "equity will preclude him from averring anything to the contrary, as where another has been innocently misled into some injurious change of position." *Russell v. Fourth Natl. Bank* (1921), 102 Ohio St. 248, 269–270, 131 N.E. 726. The doctrine precludes a person from denying his own acts or admissions that were expressly designed to influence the conduct of another, and did so influence such conduct, when such a denial will operate to injure another. *Doe v. Archdiocese of Cincinnati,* 116 Ohio St.3d 538, 2008-Ohio-67, 880 N.E.2d 892, ¶ 7. In essence, therefore, "[t]he purpose of equitable estoppel is to prevent actual or constructive fraud and to promote the ends of justice." *Ohio State Bd. of Pharmacy v. Frantz* (1990), 51 Ohio St.3d 143, 145, 555 N.E.2d 630.

{¶ 16} Here, there is no evidence that Marlene made the assignment to fraudulently induce or bait Mark and Mary Harris into signing a lease with 3740 Holding Trust. Rather, the evidence indicated that 3740 Holding Trust was created to benefit Marlene's and Gary's children. With this in mind, it would be reasonable to conclude that Marlene's assignment of the property was occasioned by her simple desire to accomplish the purpose for which she believed the trust was created.

{¶ 17} Moreover, Mark Harris testified that at the time he signed the lease, he did not know the property had been assigned by Marlene to 3740 Holding Trust. He then testified he did not rely upon the assignment and thus explicitly conceded that Marlene's actions did not influence his decision to enter the lease. By Mark's own testimony, there could have been no false representation, implicitly or explicitly, on Marlene's behalf, that induced reliance on the part of Mark Harris. In fact, we hold it would be fundamentally *inequitable* to vitiate

Marlene's declaratory action when it was Gary's actual representations (whatever they might have been) that induced Mark and Mary to sign the lease in the first place.

{¶ 18} Thus, equitable estoppel does not apply to prevent Marlene from seeking a declaration that the lease between 3740 Holding Trust and Mark and Mary Harris is invalid. Appellants' argument is not well taken.

{¶ 19} Next, appellants assert that the trial court erred in ruling that the doctrine of lis pendens applied to void the lease. In Ohio, the doctrine of lis pendens is codified under R.C. 2703.26, which provides:

{¶ 20} "When a complaint is filed, the action is pending so as to charge third persons with notice of its pendency. While pending, no interest can be acquired by third persons in the subject of the action, as against the plaintiff's title."

{¶ 21} Appellants claim that because 3740 Holding Trust held an interest in the property during the pendency of the divorce action and 3740 Holding Trust was not a party to the divorce, the lease was not a "subject of the action." Accordingly, appellants assert that the doctrine of lis pendens could not apply to invalidate the lease. We disagree.

{¶ 22} A trust, in general terms, has been defined as a right enforceable in equity, to the beneficial enjoyment of property, *the legal title to which is in another*. *In re Guardianship of Lombardo* (1999), 86 Ohio St.3d 600, 603, 716 N.E.2d 189. When a trust is created, it is necessary that legal title to the "res," the actual, existing property, immediately pass to the trustee. *First Natl. Bank of Cincinnati v. Tenney* (1956), 165 Ohio St. 513, 518, 60 O.O. 481, 138 N.E.2d 15. According to the Restatement of the Law 3d, Trusts (2003), Section 2, a trust "is a fiduciary relationship with respect to property, arising from a manifestation of intention to create that relationship and subjecting the person who holds title to the property to duties to deal with it for the benefit of charity or for one or more persons, at least one of whom is not the sole trustee."

{¶ 23} Applying these principles, and assuming that 3740 Holding Trust was created pursuant to law (probably an overly optimistic assumption), the property at issue was conveyed to 3740 Holding Trust by Marlene, the ostensible settlor. Upon this conveyance, title to the property passed to Gary, as the trustee, for the benefit of Gary's and Marlene's children. The trust, as a mere legal relationship, did not hold an actual legal interest in the property.[2] The parties to this legal relationship (Marlene, as settlor; Gary, as trustee; and Marlene's and Gary's

---

2. Given the legal nature of a trust, we question whether it can operate as an actual lessor. If not, Gary, as trustee would be the true lessor of the property held in the trust for the designated beneficiaries.

children, as beneficiaries) are those with legal rights or obligations under the law. Because legal ownership of the res of the 3740 Holding Trust vested in either Marlene, Gary, or both, that property was, in fact, a subject of the divorce action. See R.C. 2703.26. Because Mark and Mary acquired a leasehold interest in the subject property during the pendency of the divorce proceeding, the doctrine of lis pendens does apply to the transaction under consideration.

{¶ 24} Furthermore, it is worth pointing out that Mark testified that he "knew something" about the divorce proceedings between his father and Marlene. Given this admission, actual knowledge of the pendency of the divorce can be imputed to Mark; however, the Supreme Court has pointed out that notice is somewhat inconsequential in the application of lis pendens:

{¶ 25} " 'The general rule is that one not a party to a suit is not affected by the judgment. The exception is that one who acquires an interest in property which is at that time involved in litigation in a court having jurisdiction of the subject-matter and of the person of the one from whom the interests are acquired, from a party to the proceeding, takes subject to the judgment or decree, and is as conclusively bound by the result of the litigation as if he had been a party thereto from the outset. This is so irrespective of whether he has been made a party to the proceeding, or had actual notice of the pendency of the proceeding, and even where there was no possibility of his having had notice of the pendency of the litigation. It is immaterial that a purchaser was a *bona fide* purchaser and for a valuable consideration. While there is no doubt whether *lis pendens* has the effect of constructive notice, it is almost universally held that strictly speaking the doctrine of *lis pendens* is not founded upon notice but upon reasons of public policy founded upon necessity. For practical purposes, however, it is immaterial whether the doctrine of *lis pendens* be considered as based on constructive notice or on public policy.' " *Beneficial Ohio, Inc. v. Ellis,* 121 Ohio St.3d 89, 2009-Ohio-311, 902 N.E.2d 452, ¶ 14, quoting 25 Cyc. 1450.

{¶ 26} Given the circumstances of this case, the divorce proceeding was lis pendens when Mark and Mary Harris acquired an interest in property that was in part a subject of that action. That interest cannot be upheld and must be declared statutorily void.

{¶ 27} Appellants' final argument under their first assignment of error contends that the judgment of divorce, which declared the trust estate at issue a "sham entity," could not be legally conclusive of the issue in the underlying litigation because they were not parties to the divorce proceedings.[3] In effect,

---

3. We point out that had the legal conclusions at issue been rendered in a civil proceeding other than a divorce proceeding, appellants could have (and may have been legally required to) intervene as of right pursuant to Civ.R. 24(A). However, Civ.R. 75(B) precludes interven-

they argue that the doctrine of collateral estoppel cannot preclude the underlying litigation because they were neither parties nor witnesses in the prior divorce proceedings. Although this argument is rendered moot by our previous conclusion, we shall address it in the interest of justice.

 {¶ 28} Res judicata by collateral estoppel applies "when the fact or issue (1) was actually and directly litigated in the prior action, (2) was passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Thompson v. Wing* (1994), 70 Ohio St.3d 176, 183, 637 N.E.2d 917; see also *Fort Frye Teachers Assn., OEA/NEA v. State Emp. Relations Bd.* (1998), 81 Ohio St.3d 392, 395, 692 N.E.2d 140. Collateral estoppel applies even if the causes of action differ. Id.

{¶ 29} Applying these elements to the current case, the issue of the validity of the 3740 Holding Trust, and consequently the validity of any agreement into which it entered via Gary Harris, was previously litigated in the divorce action. Moreover, the domestic court determined that the 3740 Holding Trust was merely an alter ego of Gary Harris and, as a result, any business conducted through the trust estate was actually business conducted by Gary. As the property was acquired during the marriage, the domestic court concluded that the property was a marital asset to which Marlene was entitled by way of its property division.

 {¶ 30} With respect to privity, the Supreme Court of Ohio has acknowledged that the concept, particularly as it relates to res judicata, is "somewhat amorphous." *Brown v. Dayton* (2000), 89 Ohio St.3d 245, 248, 730 N.E.2d 958. The Supreme Court has utilized a broad definition to determine whether the relationship between the parties is close enough to invoke the doctrine. Id. In this spirit, the court has observed that a simple "mutuality of interest, including an identity of desired result," may create privity. Id. See also *Kirkhart v. Keiper*, 101 Ohio St.3d 377, 2004-Ohio-1496, 805 N.E.2d 1089, ¶ 8. Mutuality, however, exists only if "the person taking advantage of the judgment would have been bound by it had the result been the opposite." *Johnson's Island, Inc. v. Danbury Twp. Bd. of Trustees* (1982), 69 Ohio St.2d 241, 244, 23 O.O.3d 243, 431 N.E.2d 672. Moreover, privity of contract is a relationship between parties to a contract that allows the parties to sue each other but prevents a third party from doing so. *First Bank of Marietta v. Van Olnhausen*

---

tion in divorce, annulment, and legal-separation actions. Instead, individuals who may have an interest in property at issue in a divorce, annulment, or separation action must be joined by a party to the action and made a party defendant. Appellants were not joined pursuant to Civ.R. 75(B); however, the rule is permissive, not compulsory.

(Sept. 21, 2000), 4th Dist. No. 99CA22, 2000 WL 1573088, *6, fn. 3, citing Black's Law Dictionary (7th Ed.1999) 1217.

{¶ 31} Under the circumstances of this case, we hold that privity existed between Gary and appellants Mark and Mary Harris. It is beyond dispute that these individuals possess a "mutuality of interest" by virtue of their desire for the same ultimate result, i.e., to have 3740 Holding Trust be declared valid. Furthermore, Marlene, as the party seeking to take advantage of the Cuyahoga County court's ruling, would have been bound by that result even had the domestic court found 3740 Holding Trust to be valid and thus not a marital asset. Save a successful appeal of such a ruling, that order would have been res judicata against Marlene. Moreover, as trustee of the 3740 Holding Trust and title holder of the property, Gary signed the lease with Mark and Mary. In doing so, he placed himself in privity of contract with Mark and Mary vis-à-vis the lease.

{¶ 32} Accordingly, when the Cuyahoga County court ruled that the 3740 Holding Trust was invalid and all property of the purported trust was actually owned by Gary Harris, it, by operation of law, ruled the lease into which the 3740 Holding Trust and the Harrises entered invalid. In light of our analysis, the doctrine of collateral estoppel therefore bars relitigation of the issue by Mark and Mary Harris, privies of Gary Harris.

{¶ 33} Appellants' first assignment of error is overruled.

{¶ 34} Appellants' second assignment of error provides:

{¶ 35} "The trial court erroneously denied the motion for summary judgment by defendant-appellants, Mark and Mary Harris."

{¶ 36} Under this assignment of error, appellants contend that no genuine issue of material fact remained to be litigated between the parties once appellants demonstrated the existence of the assignment contract between Marlene and the 3740 Holding Trust. We disagree.

{¶ 37} Appellants' position rests upon arguments that we have previously rejected under appellants' first assignment of error. Regardless of Marlene's assignment of the property, we have held that the divorce was lis pendens at the time appellants acquired their interests in the property. Moreover, we held that the issue of the validity of the lease between 3740 Holding Trust and appellants could not be relitigated by operation of collateral estoppel. Finally, because Marlene did not act in bad faith or file the underlying motion without "clean hands," she cannot be equitably estopped from moving forward with the instant declaratory-judgment action. Marlene's assignment of the property neither undermines nor negatively impacts these conclusions.

{¶ 38} Moreover, as a procedural matter, at trial, appellants advanced the argument that the lease was valid as a result of Marlene's assignment of her

interest to the trust. The Supreme Court of Ohio has stated that "[a]ny error by a trial court in denying a motion for summary judgment is rendered moot or harmless if a subsequent trial on the same issues raised in the motion demonstrates that there were genuine issues of material fact supporting a judgment in favor of the party against whom the motion was made." *Continental Ins. Co. v. Whittington* (1994), 71 Ohio St.3d 150, 642 N.E.2d 615, syllabus. The point is, even if the trial court's ruling on a moving party's motion was incorrect on a matter of law, reversing the matter would be more unjust to the party who won judgment after the evidence was more completely presented, cross-examination had, and witnesses were heard and their credibility appraised. Id. at 157, 642 N.E.2d 615. In effect, even if appellants' motion had some legal merit prior to presentation of all the evidence, the denial was inconsequential due to the court's judgment after the trial on the merits.

{¶ 39} Appellants' second assignment of error is overruled.

{¶ 40} For the reasons discussed in this opinion, appellants' two assignments of error are without merit. It is therefore the judgment and order of this court that the judgment entry of the Ashtabula County Court of Common Pleas is affirmed.

Judgment affirmed.

TRAPP, P.J., concurs.

O'TOOLE, J., concurs in judgment only.