NOT RECOMMENDED FOR PUBLICATION
File Name: 23a0333n.06

Case No. 22-4006

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

FILED
Jul 21, 2023
DEBORAH S. HUNT, Clerk

|  |  |
|---|---|
| MARIE JOSEPH, derivatively on behalf of Columbia Oldsmobile Company, | ) ) ) |
| Plaintiff - Appellant, | ) ) |
| v. | ) ) ) |
| POND REALTY COMPANY, et al., | ) ) |
| Defendants - Appellees. | ) ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO

O P I N I O N

Before: GIBBONS, READLER, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Marie Joseph ("Marie") is a minority shareholder in Columbia Oldsmobile Company ("Columbia"). She brings this derivative action against defendants Pond Realty Company ("Pond") and Ned Van Emon alleging that they engaged in corporate misconduct which harmed Columbia. Notably, Marie recently spent several years litigating similar claims, involving essentially the same underlying facts and parties, in a different lawsuit. That litigation culminated in a jury verdict against her on all counts. As a result, the district court dismissed the complaint in this action on res judicata and judicial estoppel grounds. Finding no error in the district court's application of res judicata, we affirm.

I.

Marie and her brother, Ronald Joseph ("Ron"), are co-owners of Columbia—a closely-held family business that deals in cars and real estate. Marie owns a minority stake in the company,

while Ron is Columbia's majority shareholder and former Chief Executive Officer. Over several decades, Marie came to believe that Ron used his position in the company to divert business opportunities away from Columbia and to other businesses owned by Ron and his immediate family. So, she filed a direct shareholder action against him in April 2016 in her individual capacity. *See Joseph v. Joseph*, No. 1:16-cv-465 (S.D. Ohio filed Apr. 12, 2016) ("*Joseph I*"). The *Joseph I* complaint alleged that Ron had "unfairly acquire[d] personal benefits" from Columbia through "self-dealing and usurpation of [its] corporate opportunities," and that his actions proximately caused Marie financial harm. (JI R. 1, Compl., at PageID 6, 9–12).[1]

Marie amended her complaint in 2017 to add Gregory Joseph, George Joseph, Richard Joseph, and Ronald Joseph, Jr. (collectively "Ron's Sons") as defendants. The amended complaint also raised new claims alleging that the defendants facilitated undisclosed, self-dealing transactions between Columbia and other corporate entities they owned, including Pond. Marie alleged that Pond received management fees and other miscellaneous payments from Columbia without the approval of Columbia's minority shareholders (the "Columbia-Pond transactions"). She sought the return of any ill-gotten gains that Ron and Ron's Sons realized through these transactions.

The parties filed cross motions for summary judgment in 2018. In pertinent part, Ron and Ron's Sons argued that Marie lacked standing to bring her claims against them in her individual capacity, rather than derivatively on Columbia's behalf. The district court rejected Ron's standing arguments because, under Ohio law, minority shareholders may bring claims against majority shareholders in closely held corporations. But the district court granted Ron's Sons' motion for

---

[1] Record citations to *Joseph I*, Case No. 1:16-cv-465, are denoted by "JI R." Citations to the record in *Joseph II*, Case No. 1:19-cv-641, refer to "JII R."

summary judgment—concluding that Marie's claims against them could only be raised derivatively.

The trial in *Joseph I* took place over the course of two weeks in October 2018. Marie zealously prosecuted her claim for breach of fiduciary duties—featuring her theory that Ron enriched himself by funneling money from Columbia to Pond under the guise of management fees and other miscellaneous transactions. The jury considered extensive evidence on this point. For example, Ron's Sons each testified about the nature of the Columbia-Pond transactions. And several other witnesses presented similar testimony. Among them was Ned Van Emon, the former Chief Financial Officer of both Columbia and Pond until October 2016. Van Emon testified that Columbia disbursed funds to Pond for legitimate business purposes which ultimately benefitted Columbia.

The jury returned a verdict in favor of Ron on all claims. Among other things, it determined that "all . . . transfers from Columbia and its subsidiaries to [Pond] . . . were fair to Columbia." (JI R. 210, Jury Interrog., at PageID 15719). Marie appealed, and this Court affirmed the district court's judgment in full. *Joseph v. Joseph*, No. 19-3350, 2022 WL 3536273 (6th Cir. Aug. 18, 2022), *reh'g denied* (6th Cir. Oct. 11, 2022).

Following the adverse jury verdict in *Joseph I*, Marie filed another suit in 2019, the outcome of which is the subject of this appeal. Marie's second suit ("*Joseph II*") is a derivative action brought on Columbia's behalf, naming Pond and Van Emon as defendants. Like the *Joseph I* complaint, the *Joseph II* complaint alleges that Pond participated in and was unjustly enriched by "undisclosed and unauthorized self-dealing transactions" between Columbia and Pond. (JII R. 1, Complaint, at PageID 8, 11). It similarly avers that Van Emon "enter[ed] into and implement[ed] numerous financial relationships and [self-dealing] transactions" between

Columbia and Pond. (*Id.* at PageID 4–7). Marie seeks the return of all profits the defendants have gained through the Columbia-Pond transactions.

Pond and Van Emon moved to dismiss the complaint. The district court granted their motions and dismissed Marie's complaint with prejudice, holding that Marie's derivative claims are barred by res judicata. The court also ruled that Marie was judicially estopped from pursuing the present litigation. Marie now brings this timely appeal.

## II.

We review a district court's application of res judicata and judicial estoppel de novo. *Buck v. Thomas M. Cooley L. Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) (res judicata standard of review); *Audio Technica U.S., Inc. v. United States*, 963 F.3d 569, 574 (6th Cir. 2020) (judicial estoppel standard of review).

"[F]or judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Prod. Sols. Int'l, Inc. v. Aldez Containers, LLC*, 46 F.4th 454, 458 (6th Cir. 2022) (quoting *Taylor v. Sturgell*, 553 U.S. 880, 891 n.4 (2008)). Marie filed both of her lawsuits in the Southern District of Ohio under diversity jurisdiction. We therefore apply Ohio state law to her appeal.

## III.

To begin, Marie argues that the elements of res judicata were not met here—and therefore, the district court erred in applying the doctrine to dismiss her complaint. After conducting a de novo review, we disagree.

Under Ohio law, "[t]he doctrine of res judicata encompasses the two related concepts of claim preclusion, also known as res judicata or estoppel by judgment, and issue preclusion, also known as collateral estoppel." *O'Nesti v. DeBartolo Realty Corp.*, 862 N.E.2d 803, 806 (Ohio

2007) (citing *Grava v. Parkman Twp.*, 653 N.E.2d 226, 228 (Ohio 1995)).  In this case, the parties use the term "res judicata" in the former sense, referring to claim preclusion.  Accordingly, we address claim preclusion only.  Claim preclusion makes "an existing final judgment or decree between the parties to litigation . . . conclusive as to all claims which were or might have been litigated in a first lawsuit."  *Nat'l Amusements, Inc. v. City of Springdale*, 558 N.E.2d 1178, 1180 (Ohio 1990) (quoting *Rogers v. City of Whitehall*, 494 N.E.2d 1387, 1388 (Ohio 1986)).  In other words, it "operates as 'a complete bar'" to subsequent litigation under certain circumstances.  *E.g.*, *Brown v. City of Dayton*, 730 N.E.2d 958, 961 (Ohio 2000) (quotation omitted).  The doctrine applies when "(1) a court of competent jurisdiction rendered a valid, final judgment on the merits in an earlier action, (2) the second action involves the same parties or their privies, (3) the second action raises claims that were or could have been litigated in the first action, and (4) the second action arises out of the same transaction or occurrence that was the subject of the first action." *State ex rel. Armatas v. Plain Twp. Bd. of Zoning Appeals*, 154 N.E.3d 75, 77 (Ohio 2020) (citing *Portage Cnty. Bd. of Comm'rs v. Akron*, 846 N.E.2d 478, 495 (Ohio 2006)); *see also, e.g.*, *Bus. Dev. Corp. of S.C. v. Rutter & Russin, LLC*, 37 F.4th 1123, 1129 (6th Cir. 2022).  The defendants bear the burden of proof as to each element.  *See Ohio ex rel. Boggs v. City of Cleveland*, 655 F.3d 516, 520 (6th Cir. 2011).

There is no dispute that *Joseph I* resulted in a final, valid decision on the merits by a court of competent jurisdiction, in satisfaction of the first element.  We consider each of the remaining elements in turn.

## 1. Same Parties or Their Privies

Claim preclusion requires all parties to the second action to be identical to, or in privity with, those in the first action.  *Armatas*, 154 N.E.3d at 77.  The parties only dispute whether

defendants Pond and Van Emon satisfy this element. Because Pond and Van Emon were not named in *Joseph I*, the question turns on whether they were in privity with Ron or Ron's Sons, the defendants in that case.

The Ohio Supreme Court has described the concept of privity as "somewhat amorphous." *Brown*, 730 N.E.2d at 962. But we are not without guidance. Privity essentially concerns whether parties that are "technically distinct" nonetheless "share a 'close enough' relationship" for the purposes of claim preclusion. *Bus. Dev. Corp.*, 37 F.4th at 1136 (citing *Brown*, 730 N.E.2d at 962). Ohio courts apply a "broad" or "relaxed" definition of privity in this context. *Brown*, 730 N.E.2d at 962; *State ex rel. Davis v. Pub. Emps. Ret. Bd.*, 881 N.E.2d 294, 301 (Ohio Ct. App. 2007).

As such, a simple "mutuality of interest"—such as an "identity of desired result" in the original litigation—can support a finding of privity. *Brown*, 730 N.E.2d at 962; *Kirkhart v. Keiper*, 805 N.E.2d 1089, 1092 (Ohio 2004); *see also Stewart v. IHT Ins. Agency Grp. LLC Welfare Benefits Plan*, No. 2:16-cv-210, 2020 WL 3166674, at *6 (S.D. Ohio June 15, 2020) (finding privity among parties with the same legal interests in an arbitration). For example, the plaintiffs in *Brown*, who each identified as a "resident[] and taxpayer[] within the city of Dayton," satisfied this requirement because they shared the same goal through their respective lawsuits, that being "the general disallowance" of a local ordinance. 730 N.E.2d at 962. And in *Kessler v. Totus Tuus, L.L.C.*, the parties stood in privity because they sought "the same ultimate result"—a declaration that a disputed trust estate was valid. 923 N.E.2d 1160, 1167 (Ohio Ct. App. 2009). We have followed suit in finding privity between litigants who shared an overarching "common interest" in proving the lawfulness of foreclosure proceedings. *Harris v. Ocwen Loan Servicing, LLC*, No. 17-5399, 2017 WL 8791308, at *3 (6th Cir. Nov. 22, 2017) (applying Ohio law in relevant part).

Parties asserting the "same legal right[s]" may also stand in privity. *See ABS Indus., Inc. ex rel. ABS Litig. Tr. v. Fifth Third Bank*, 333 F. App'x 994, 999 (6th Cir. 2009) (internal quotation marks omitted). That was the case in *Fender v. Miles*, where different litigants faulted the same individual for an accident. 923 N.E.2d 631, 635 (Ohio Ct. App. 2009). Finally, privity may be shown by an individual's "active participation in the original lawsuit"—such as when a party provided testimony during those former proceedings. *See State ex rel. Schachter v. Ohio Pub. Emps. Ret. Bd.*, 905 N.E.2d 1210, 1217 (Ohio 2009); *see also Davis*, 881 N.E.2d at 301; *Darden v. Montgomery Cnty. Bd. of Comm'rs*, No. 3:22-cv-264, 2023 WL 3764272, at *11 (S.D. Ohio June 1, 2023).

Ohio courts have also provided helpful limiting principles as to privity. For example, a mutuality of interest exists only where "the person taking advantage of the judgment would have been bound by it had the result been the opposite." *O'Nesti*, 862 N.E.2d at 806 (quoting *Johnson's Island, Inc. v. Bd. of Twp. Trs. of Danbury Twp.*, 431 N.E.2d 672, 675 (Ohio 1982)); *see also Schachter*, 905 N.E.2d at 1217 (explaining that a "stranger to the prior judgment" may not rely on it for purposes of claim preclusion). And significantly, litigants seeking "individually tailored results" are not in privity with one another. *O'Nesti*, 862 N.E.2d at 806; *see also Davis*, 881 N.E.2d at 303–04; *Banks v. Toledo*, --- N.E.3d ----, 2023 WL 3885860, at *7 (Ohio Ct. App. June 2, 2023). The facts of *O'Nesti* help to illustrate this point. There, defendant-employer DeBartolo implemented a stock incentive plan through which it allocated "a different number of shares of stock" to eligible employees by contract. 862 N.E.2d at 805. When DeBartolo refused to distribute the stock pursuant to the terms of these contracts, a group of employees successfully sued to enforce their rights (the "*Agostinelli*" suit). *Id.* Later, a second group of employees brought their own action against DeBartolo, similarly demanding payment for stock they never received. *Id.*

Relevant here, the *O'Nesti* plaintiffs asked the court to apply claim preclusion against DeBartolo. *Id.* They argued that the facts, claims, and issues involved in their case were already litigated in *Agostinelli*, and that they stood in sufficient privity with the *Agostinelli* plaintiffs to apply the doctrine. *Id.* The Ohio Supreme Court disagreed. *Id.* at 807. It emphasized that the plaintiffs in *O'Nesti* and *Agostinelli* did *not* seek "a general result, such as the blanket enforcement of the stock incentive plan." *Id.* Instead, each litigant sought relief that was tailored to his individual circumstances: specifically, payments "for the value of the stock that each [plaintiff] claimed was due to [him]" in the stock incentive program. *Id.* (further highlighting that the plaintiffs were all "entitled to different benefits" under the terms of their contracts). For these reasons, the *O'Nesti* plaintiffs did not share "an identity of desired result" with the litigants in *Agostinelli*, rendering claim preclusion inapplicable.[2] *Id.* at 806, 808.

Applying these general rules, we conclude that Pond and Van Emon are in privity with Ron. The thrust of the relevant allegations in both *Joseph I* and *Joseph II* concerns the defendants' common scheme to conduct unfair dealings between Columbia and Pond. The defendants in both suits are all broadly motivated by "the same ultimate result," a determination that the Columbia-Pond transactions were fair and caused no harm to the plaintiffs. *See Kessler*, 923 N.E.2d at 1167; *see also Brown*, 730 N.E.2d at 962; *Fender*, 923 N.E.2d at 635; *Harris*, 2017 WL 8791308, at *3. They do not seek "individually tailored results" based on dissimilar legal rights or interests, as was the case in *O'Nesti*, N.E.2d at 807. Finally, the defendants' mutuality of interest is further

---

[2] Although the *O'Nesti* decision involved the plaintiffs' attempt to invoke the doctrine offensively rather than the defensively as in this case, its privity analysis remains instructive. 862 N.E.2d at 808 (explaining that offensive claim preclusion "is generally disfavored"). Importantly, the court's analysis about limitations on offensive claim preclusion had no bearing on its finding as to privity. *Id.* at 807–08.

demonstrated by the fact that Pond's owners (i.e., Ron's Sons) and Van Emon all favorably testified for Ron in the original action. *See Schachter*, 905 N.E.2d at 1217.

Marie resists this result by asserting two relevant counterarguments, neither of which carries the day.

First, Marie contends that Pond and Van Emon lack mutual interests with Ron because no verdict in *Joseph I* could have bound the parties in *Joseph II*. *See O'Nesti*, 862 N.E.2d at 806. Marie bases this argument on the fact that Ron was sued in his individual capacity. However, as this court recently explained, "the Ohio Supreme Court has applied preclusion against nonparties to the first suit (and so found them in privity with parties) even when these nonparties would not have been *formally bound* by the earlier judgment." *Bus. Dev. Corp.*, 37 F.4th at 1137 (citing *Brown*, 730 N.E.2d at 961) (emphasis added). Similar here, an adverse decision in *Joseph I* would not have "formally bound" Pond or Van Emon; after all, they were not named parties to that suit. But if the jury had determined that the Columbia-Pond transactions were, broadly speaking, unfair to Columbia, that finding would have binding implications on Pond and Van Emon's defense in this case. *Cf. Harris*, 2017 WL 8791308, at *3 (explaining that a court's conclusion in one action that particular foreclosure proceedings were illegal would be binding in a subsequent suit against other related parties). Marie points to no legal authority for her argument and fails to meaningfully distinguish this case from the cases cited above. Her argument is thus unavailing.

Second, Marie makes a cursory argument that privity does not attach "just because Pond and Van Emon want the same general result as Ron." (Dkt. 25, Appellant Reply Br., Page: 18). This simply does not square with the case law. For example, the Ohio Supreme Court in *Brown* expressly held that "an identity of desired result" *is* sufficient to create privity. 730 N.E.2d at 962. Further to the point, the plaintiff-privies in *Brown* all sought the same "*general*" result. *Id.*

(emphasis added).  Or consider *Kessler*, where privity was satisfied because the parties desired "the same ultimate result."  923 N.E.2d at 1167.  Marie makes no attempt to grapple with these cases in her briefing.  The only support she provides for her position is our unpublished decision in *Massengale v. State Farm Mut. Auto. Ins. Co.*, No. 21-1430, 2022 WL 3585640 (6th Cir. Aug. 22, 2022).  But that case does nothing to advance her position here since it applies Michigan, rather than Ohio, law.  *Id.* at \*2.

In sum, Pond, Van Emon, and Ron are in privity given their "identity of desired result" in their respective suits.  *Brown*, 730 N.E.2d at 962.  We note that the parties' briefing further debates the merits of this issue on other grounds.  We need not address those separate arguments here as the preceding discussion sets forth an independent, sufficient basis for our finding of privity.

## 2. Claims Available in the First Action

The next element asks if Marie's claims in this matter were or could have been asserted in *Joseph I*.  *Armatas*, 154 N.E.3d at 77.  The *Joseph II* complaint alleges various derivative shareholder claims against Pond and Van Emon—none of which were raised in *Joseph I*.  The question, then, is whether these claims could have been litigated in the first action.

Ohio courts "require[] a plaintiff to present every ground for relief in the first action, or be forever barred from asserting it."  *Id.* (quoting *Nat'l Amusements*, 558 N.E.2d at 1180).  This element is broadly construed; a litigant need only "have had the ability to assert its causes of action in the earlier suit through 'all the proper means within [its] control.'"  *Bus. Dev. Corp.*, 37 F.4th at 1135 (quoting *Nat'l Amusements*, 558 N.E.2d at 1180) (alteration in original).  However, plaintiffs generally are not obligated to supplement their complaints to encompass new instances of misconduct that occur after filing.  *Cont'l Cas. Co. v. Indian Head Indus., Inc.*, 941 F.3d 828, 837

(6th Cir. 2019); *see also Ardary v. Stepien*, No. 82950, 2004 WL 253491, at *3 (Ohio Ct. App. Feb. 12, 2004).

Marie asserts that she should be allowed to proceed on two categories of claims. First, she argues that this lawsuit addresses misconduct that happened *after* she filed her amended complaint in *Joseph I*. That amended complaint was filed on January 10, 2017. Therefore, Marie must point to Pond and Van Emon's alleged misconduct from after that date. *Cf. Cont'l Cas. Co.*, 941 F.3d at 837. This she fails to do. Van Emon's service with Columbia ended in 2016. He plainly could not have breached his fiduciary duties to Columbia (or engage in any of the other wrongdoings charged against him) once he relinquished his position. And nothing in the complaint appears to implicate Pond in misconduct during the relevant time period. By contrast, the complaint specifically challenges Pond and Van Emon's roles in the Columbia-Pond transactions up until September 2016. This suggests that if Marie's claims related to conduct taking place any time after January 2017, she knew how to make that clear in her pleadings. The fact that she did not weighs strongly against her on this point.

Second, Marie refers to a category of claims she now seeks to bring which "the District Court found could only be pursued derivatively rather than directly." (Dkt. 19, Appellant Br., Page: 15–16). Marie emphasizes that these claims *were not* tried in *Joseph I*. But she fails to explain why they *could not* have been. The fact is that the district court did not prohibit Marie from bringing derivative claims alongside her direct claims in the prior action. And she otherwise identifies no "legal impediment" preventing her from timely raising derivative claims. *Bus. Dev. Corp.*, 37 F.4th at 1135. To the contrary, under Ohio law, it seems likely that Marie could have pursued her direct and derivative shareholder claims simultaneously in *Joseph I* had she availed herself of that option. *See, e.g.*, *Boedeker v. Rogers*, 746 N.E.2d 625, 633 (Ohio Ct. App. 2000)

("Shareholders have the right to bring direct and derivative actions simultaneously." (quoting 12B Fletcher Cyclopedia of the Law of Corporations § 5908 (2000))); *Smith v. Robbins & Myers, Inc.*, 969 F. Supp. 2d 850, 864 n.13 (S.D. Ohio Aug. 27, 2013) ("[I]t is not unusual for a court to allow [shareholder] claims to proceed [directly] and derivatively at the same time." (first alteration in original)); *In re Dayco Corp. Deriv. Sec. Litig.,* 102 F.R.D. 624, 630 (S.D. Ohio 1984) ("[T]he case law is virtually unanimous in holding that one counsel can represent a stockholder bringing both an individual and a derivative action." (emphasis and footnote omitted)). Marie cannot avoid preclusion simply because she overlooked this alternative legal strategy in the previous proceedings. *Brown*, 730 N.E.2d at 962; *Grava*, 653 N.E.2d at 230.

Marie's remaining arguments also miss the mark. For example, she claims that she was unaware of the Columbia-Pond transactions when she filed her initial complaint in *Joseph I*, and therefore it would be unfair to penalize her for not including Van Emon in that action. But this argument ignores the fact that Marie filed an amended complaint which expressly challenged the Columbia-Pond transactions. She offers no reason for failing to name Pond or Van Emon in her amended complaint. In any event, her "negligence in failing to discover a claim does not stop preclusion so long as [she] *could have* asserted that claim by exercising reasonable diligence." *Bus. Dev. Corp.*, 37 F.4th at 1135 (emphasis in original). Marie also suggests that the defendants ask this court "to create from whole cloth" a rule that "failing to include all possible defendants in one proceeding would bar any future claims against them in separate proceedings." (Dkt. 25, Appellant Reply Br., at Page: 11). But this statement overlooks the well-established role that res judicata plays in ensuring the finality of judgments for all litigants as well as the judiciary. *See, e.g.*, *Grava*, 653 N.E.2d at 230.

Marie's *Joseph II* claims could have been litigated in her first lawsuit. Therefore, this element of claim preclusion is satisfied.

### 3. Action Arising Out of the Same Transaction or Occurrence

Finally, claim preclusion applies if *Joseph II* arose out of the same "transaction or occurrence" involved in *Joseph I*. *Armatas*, 154 N.E.3d at 77. In this context, the Ohio Supreme Court defines a "transaction" as a "common nucleus of operative facts." *Grava*, 653 N.E.2d at 229 (quoting Restatement (Second) of Judgments § 24 (1982)). Courts use the "logical relation" test to determine whether claims arise out of the same transaction. *Bus. Dev. Corp.*, 37 F.4th at 1133 (citing *Rettig Enters., Inc. v. Koehler*, 626 N.E.2d 99, 103 (Ohio 1994)). Under that test, we ask whether "litigating each claim separately 'would involve a substantial duplication of effort and time by the parties and the courts.'" *Id.* (quoting *Rettig Enters.*, 626 N.E.2d at 103). This element is satisfied even where a litigant "present[s] evidence or grounds or theories of the case not presented in the first action." *Grava*, 653 N.E.2d at 229 (quoting Restatement (Second) of Judgments § 25 (1982) (emphasis omitted)).

Here, the logical relationship test is satisfied. As already established, Marie's current claims involve the same Columbia-Pond transactions that were at issue in *Joseph I*. Those transactions were extensively litigated in *Joseph I* over the course of six years (from filing of the complaint through appeal) and were subject to a jury's scrutiny during a two-week trial. Allowing Marie to proceed with *Joseph II* would require a gross duplication of effort for all parties involved. Among other things, witnesses who were deposed and who testified at trial—particularly Van Emon and Pond's owners, Ron's Sons—would inevitably be called again to retread old ground. And then there is the certain overlap in documentary evidence concerning the Columbia-Pond transactions. These facts tilt the scales against Marie in our inquiry.

Urging against this conclusion, Marie again argues that her current claims "occurred on different dates and in different amounts" than those at issue in *Joseph I*. (Dkt. 25, Appellant Reply Br., at Page: 8–9). This is a non-starter for the same reasons discussed above; we are unpersuaded that Marie's allegations relate to misconduct that occurred after her amended complaint in *Joseph I*. Marie also emphasizes that her current claims are in the form of a derivative action. In particular, she points out that they were not subject to a final judgment on the merits in *Joseph I*, and "therefore cannot be the same 'transactions'" for purposes of claim preclusion. (*Id.* at Page: 7). But under Ohio's res judicata doctrine, the fact that several different legal theories may support a lawsuit does not create multiple "transactions"—even if those legal theories "depend on different shadings of the facts, or . . . call for different measures of liability or different kinds of relief." *Grava*, 653 N.E.2d at 229 (quoting Restatement (Second) of Judgments § 24 (1982)) (internal quotation marks omitted). That tenet operates here. Marie's derivative suit in *Joseph II* is ultimately a restyling of her direct shareholder claims raised in *Joseph I*; her assertion of a different legal theory in this case does not change the fact that the two actions share a common nucleus of operative facts.

The final judgment entered in *Joseph I* precludes litigation of Marie's claims in this action. That is because Pond and Van Emon are in privity with Ron; Marie could have litigated her current claims in her previous suit; and, ultimately, the allegations in *Joseph II* arise from the same series of transactions at issue in *Joseph I*. Therefore, res judicata applies and we affirm the judgment of the district court. Having concluded that dismissal was appropriate, we need not address (1) defendants' additional argument that the claims were subject to dismissal for failure to state a claim or (2) plaintiff's arguments based on the district court's application of judicial estoppel.

\*       \*       \*

The district court's judgment is therefore AFFIRMED.